## BEST *v.* UNITED STATES (No. 163).[1]

PATENT EAR CAPS.

A child's cap made of elastic braid or straps, connected by narrow bands of cotton tape and designed to prevent the ear from growing abnormally and held in position when spread closely over the skull by being knotted under the chin, is not a bit of cotton wearing apparel and dutiable under paragraph 314, tariff act of 1897, but is a brace, rather, and was dutiable under paragraph 320 of said act.

### United States Court of Customs Appeals, October 18, 1910.

TRANSFERRED from the United States Circuit Court, Southern District of New York, G. A. 6941 (T. D. 30121).

[Reversed.]

*Kammerlohr & Duffy (Joseph G. Kammerlohr* on the brief) for appellants.

*D. Frank Lloyd,* Assistant Attorney General (*William A. Robertson* on the brief), for the United States.

Before MONTGOMERY, HUNT, SMITH, and BARBER, Judges.

HUNT, Judge, delivered the opinion of the court:

Appellants, Best & Co., in December, 1908, imported merchandise known as Claxton's patent ear caps. The collector at New York classified the articles as cotton wearing apparel, under the provisions of paragraph 314 of the tariff act of 1897, which reads as follows:

314. Clothing, ready-made, and articles of wearing apparel of every description, including neck-ties or neckwear composed of cotton or other vegetable fiber, or of which cotton or other vegetable fiber is the component material of chief value, made up or manufactured, wholly or in part, by the tailor, seamstress, or manufacturer, and not otherwise provided for in this act, fifty per centum ad valorem: *Provided,* That any outside garment provided for in this paragraph having india rubber as a component material shall pay a duty of fifteen cents per pound and fifty per centum ad valorem.

The importers urged that the ear caps were entitled to entry at the rate of 45 per cent, either under paragraph 320 of the tariff of 1897

---

[1] Reported in T. D. 31009 (19 Treas. Dec., 1072).

or under the provision for manufactures of cotton in paragraph 322. These paragraphs, so far as necessary to the case before us, are, respectively, as follows:

320. Bandings, beltings, bindings, bone casings, cords, garters, linings for bicycle tires, ribbons, suspenders and braces, tapes, tubing, and webs or webbing, any of the foregoing articles made of cotton or other vegetable fiber, * * * rubber or otherwise * * * , forty-five per centum ad valorem; * * *.

322. All manufactures of cotton not specially provided for in this act, forty-five per centum ad valorem.

Upon review of the decision of the collector, the Board of General Appraisers heard testimony as to the manufacture and use of the articles, and thereafter held that they were properly dutiable as wearing apparel under paragraph 314, already quoted, and sustained the action of the collector.   An appeal was taken by the importers to the Circuit Court for the Southern District of New York, but before decision by that court the record was certified to this court, pursuant to section 29 of the act of Congress approved August 5, 1909, which provided that upon the organization of the Court of Customs Appeals cases within the jurisdiction of this court pending and not submitted for decision in any United States circuit court should be certified to the Court of Customs Appeals for further proceedings.

It is therefore before us for review of the decision of the Board of General Appraisers.

We are constrained to disagree with the ruling of the Board of Appraisers, and to exclude the articles from within any definition of wearing apparel under section 314.   The caps are made to be worn by children in the nursery and during sleep.   They consist of a series of elastic braid or straps, connected by narrow bands of cotton tape— a network of narrow bands—which spread closely over the skull and are held in position by being knotted under the chin, the arrangement being such that when tied the ears are drawn or pressed close to the head of the wearer.   The purpose of the cap is to hold the child's ears close to the head in order to prevent the disfigurement of the standing out of the ears.   It is also claimed that by wearing them at night children's hair will not become disarranged, and that a child who wears one while sleeping will unconsciously acquire the habit of breathing through the nose instead of through the open mouth.   But these two latter claims are of no real importance, for it is evident from an inspection of the article and from the record that the only substantial purpose of the cap is to prevent or relieve a mild deformity by pressing the ears close to the head.   Plainly the article is not an ear cap to protect the ear against cold, nor is it possible to conceive of its being worn for adornment.   As we must find that the prevention of physical misshape is what the caps are intended for, it would be unreasonable to classify them as wearing apparel under section 314.

In our opinion the ear caps are best described as braces, and ought to be classified under paragraph 320. They are braces in that they hold the ears of the wearer firmly in a position close against the head. Thus the cap braces the ears, and by pressure a tendency of the ear to lean and grow outward is sought to be relieved.

United States *v.* A. Steinhardt & Bro. (141 Fed Rep., 494; T. D. 12112) is not directly pertinent, because the court there dealt with garters, and decided that they were wearing apparel. With that ruling we should probably be in accord; but here we have merchandise of a very different character.

The decision of the Board of General Appraisers is reversed, and the cause is remanded with directions to proceed as herein indicated.

DE VRIES, Associate Judge, being disqualified, took no part in the hearing or decision of this case.