(C. D. 2006)

ANTONIO POMPEO *v.* UNITED STATES

United States Customs Court, First Division

(Decided June 17, 1958)

*Barnes, Richardson & Colburn* (*Edward N. Glad* of counsel) for the plaintiff.
*George Cochran Doub*, Assistant Attorney General (*Mollie Strum*, trial attorney), for the defendant.

Before OLIVER, MOLLISON, and WILSON, Judges

MOLLISON, Judge: As originally enacted, paragraph 1531 of the Tariff Act of 1930 provided for—

* * * manufactures of leather * * * or of which leather * * * is the component material of chief value, not specially provided for * * *,

at the rate of 35 per centum ad valorem. By the provisions of the Presidential proclamation, reported in T. D. 51802, the rate of duty on such manufactures, other than certain named articles not here

involved, was reduced to 17½ per centum ad valorem. By the provisions of the Presidential proclamations, reported in T. D's. 52373 and 52476, the rate on such manufactures of leather was further reduced to 12½ per centum ad valorem, but it was provided that there should be excepted from said reduction—

* * * coin purses, change purses, billfolds, bill cases, bill rolls, bill purses, banknote cases, currency cases, money cases, cardcases, license cases, pass cases, passport cases, letter cases, and similar flat leather goods; strops and straps; buckles designed to be worn on the person, *and other wearing apparel*; and leads, leashes, collars, muzzles, and similar dog equipment * * *. [Italics added.]

The plaintiff in this case imported into the United States certain "crash helmets" used by amateur and professional motorcycle and auto racers. Duty was assessed thereon by the collector of customs at the 17½ per centum rate under paragraph 1531, as modified, and the protest claim is for duty at the rate of 12½ per centum ad valorem under the said paragraph, as modified. It is clear that the sole issue is whether or not the crash helmets in issue are within the meaning of the term "wearing apparel," as used in the modification of paragraph 1531, *supra*.

There is no question but that leather is the component material of chief value of the helmets in question. A sample of the importation, received in evidence without objection as plaintiff's exhibit 1, shows them to consist of a dome-shaped shell, said to be made of Fiberglas, with a leather liner, vizor, earlaps, and chinstrap. The uncontradicted testimony offered on behalf of the plaintiff is that such helmets are required by the rules of the national and international amateur and professional motorcycle and auto-racing associations to be worn by all drivers in races under the auspices or sponsorship of the said associations under penalty of disqualification; that the helmets must be first approved by the governing bodies of the associations after laboratory tests; that the requirements of the associations as to the nature and extent of the protection afforded by the helmets are such that they are heavy and uncomfortable to wear for any length of time; and that, because of those facts, they are not worn, even by the drivers, except while actually engaged in a race.

Plaintiff's argument that the helmets at bar are not included within the term "wearing apparel" is based upon the concept that the term embraces only articles which are ordinarily worn, in the sense of everyday, well-recognized, articles of dress. Plaintiff, consequently, argues that the term includes articles worn primarily for comfort or adornment, but does not include articles worn primarily for protection against occupational or sporting hazards, which, moreover, entail an element of discomfort in the wearing.

Defendant, on the other hand, contends for a broader definition, including "all articles of dress generally worn by persons in the calling and condition of life in the locality of the person in question."

Dictionary definitions tend to indicate that wearing apparel refers to clothes or covering for the human body worn for decency or comfort, and common knowledge indicates that adornment is also an element of many articles of wearing apparel.[1]

There have been many judicial decisions in which the term "wearing apparel" has been the subject of discussion. In many of the cases, however, the term has been discussed with particular reference to certain situations, such as the distribution of decedents' estates under various state laws, and, as said by the late Surrogate Slater in *In re Holden*, 109 Misc. (N. Y.) 207, 208, 178 N. Y. S. 548,

> The cases in the several states of the Union are not at all in accord upon what should be included as "wearing apparel" of a man or woman.

In that case, for example, a watch and chain were held to be wearing apparel, but not earrings, finger rings, a breastpin, or a bracelet. In a later case, *In re Steimes' Estate*, 150 Misc. (N. Y.) 279, 270 N. Y. S. 339, cited and relied upon by the defendant, the term was held to include two diamond finger rings. Such cases often go off on questions of the intent of the particular testator, public policy, local statutes, associated words, the presence or absence of residuary clauses, etc., and can hardly be relied upon, when taken out of context, as establishing the general understanding in common speech of the particular term.

Counsel for both parties cite, and rely upon, the decision of the Supreme Court of the United States in *Arnold, Constable & Co.* v. *United States*, 147 U. S. 494, 37 L. ed. 253, wherein, in connection with a tariff provision reading "Clothing, ready made, and articles of wearing apparel of every description," the Court, among other things, said:

> * * * The term "wearing apparel" is not an uncommon one in statutes, and is used in an inclusive sense as embracing all articles which are ordinarily worn— dress in general. * * *

Plaintiff interprets the term "ordinarily worn," used by the Court, as meaning worn under ordinary circumstances, while defendant interprets the term as meaning ordinarily worn on the human body, as

---

[1] Funk & Wagnalls New Standard Dictionary, 1930, 1942:
wearing apparel. Clothes for wearing; clothing in general.
Webster's New International Dictionary, 2d ed., 1945:
wearing apparel. Clothing; clothes.
clothes. Covering for the human body; dress; vestments; vesture;—a general term for whatever covering is worn, or is made to be worn, for decency or comfort.

distinguished from ordinarily placed on shelves or ordinarily carried in one's pockets. The Court, in the *Arnold, Constable* case, *supra*, was considering a situation wherein the appellant claimed that the term "wearing apparel of every description" related only to outer, as distinguished from, undergarments, and the Court was making the point that underclothing (which was the subject matter) was well within the meaning of the term "wearing apparel of every description." We do not think that the above quotation, considering the circumstances under which it was made and the all-embracive nature of the term there in question, is of aid in disposing of the question before us.

Similarly, the case of *Cruger's (Inc.)* v. *United States*, 12 Ct. Cust. Appls. 516, T. D. 40730, cited and relied upon by both parties, is of no aid in the determination of the issue in this case. In that case, certain helmets worn by polo players in playing the game had been assessed with duty under paragraph 919 of the Tariff Act of 1922, providing for "Clothing and articles of wearing apparel of every description" and were claimed to be properly dutiable under a provision for "equipment, such as is ordinarily used in conjunction [with the taking of physical exercise with balls or the playing of any indoor or outdoor ball game or sport]" in paragraph 1402 of the same act.

It is apparent from a reading of the decision of the appellate court and of this court in that case, as well as the briefs on file in connection therewith, that the parties did not contend that the competing tariff provisions were mutually exclusive and opposed to one another, but tried and submitted the case upon the theory that both provisions applied to the merchandise, one being more relatively specific than the other. This, of course, is not a concession made by the plaintiff in this case, who contends vigorously that the instant merchandise is not included within the meaning of the term "wearing apparel."

Both parties likewise cite and rely upon the decision of our appellate court in the case of *Best* v. *United States*, 1 Ct. Cust. Appls. 49, T. D. 31009, involving what was called by the appellate court a "cap," consisting of a series of elastic braid or straps, connected by narrow bands of cotton tape, a network of narrow bands, designed to be placed on the head of a baby and held in position by knotting under the chin so as to hold the child's ears close to the head in order to prevent the disfigurement of the standing out of the ears. The court held that they were not wearing apparel, but rather braces, and dutiable under a provision therefor in paragraph 320 of the act of 1897. In the brief filed in its behalf in the present case, counsel for the Government denominates the caps as "bandages" and urges that there is no similarity between such merchandise and the helmets at bar.

However, in reaching its decision in that case, our appellate court indicated that wearing apparel connoted an article worn for comfort or adornment, and that devices worn to prevent deformity were not within the scope of the term "wearing apparel." Note that, here, the court did not indicate that the terms "wearing apparel" and "braces" both applied to the merchandise, but held that the ear caps were clearly not within the scope of the term "wearing apparel." The court said:

> * * * Plainly the article is not an ear cap to protect the ear against cold, nor is it possible to conceive of its being worn for adornment. As we must find that the prevention of physical misshape is what the caps are intended for, it would be unreasonable to classify them as wearing apparel under section 314. * * *

It does not take any extension of the reasoning of our appellate court in the *Best* case, *supra*, to conclude that it also applies to articles worn as a protection against the hazards of a game, sport, or occupation, or the prevention of injury, rather than for reasons of decency, comfort, or adornment. In this category would be found such things as welders' face masks, divers' helmets and dress, policemen's bullet-proof vests, and the lead aprons worn by X-ray technicians. All of these are worn for protection against injury and would not be considered in ordinary parlance to be "wearing apparel." We think the crash helmets at bar fall into this category and are outside the scope of the term "wearing apparel," as used in the modification of paragraph 1531, *supra*.

Judgment will, therefore, issue sustaining the protest claim accordingly.