BEFORE THE SECOND DIVISION, APRIL 11, 1960

**No. 64074.**—United Merchandising Corp. *v.* United States, protest 58/2488 (Los Angeles).

RAO, Judge: Certain imported merchandise, invoiced as "Cotton Pistol Belts," was assessed with duty at the rate of 20 per centum ad valorem, pursuant to the provision in paragraph 919 of the Tariff Act of 1930, as modified by the General Agreement on Tariffs and Trade, 82 Treas. Dec. 305, T.D. 51802, for wearing apparel, wholly or in chief value of cotton, not specially provided for.

It is claimed in this action, by way of amendment to the protest filed against the collector's decision, that said merchandise is properly dutiable at the rate of 17½ per centum ad valorem, within the provision of paragraph 912 of said act, as modified by the Torquay Protocol to the General Agreement on Tariffs and Trade, 86 Treas. Dec. 121, T.D. 52739, supplemented by Presidential notification, 86 Treas. Dec. 337, T.D. 52820, for articles made from fabrics, with fast edges, not over 12 inches wide, wholly or in chief value of cotton or of cotton and india rubber, and not specially provided for. The original claim in the protest that said pistol belts "are dutiable at 17½ percent under paragraph 919 as articles made from fabrics with fast edges," has been abandoned and is hereby dismissed.

The respective tariff provisions read as follows:

Paragraph 919 and T.D. 51802, *supra*:

Clothing and articles of wearing apparel of every description, manufactured wholly or in part, wholly or in chief value of cotton, and not specially provided for:

| * | * | * | * | * | * | * |

Other_____20% ad val.

Paragraph 912 and T.D. 52739, *supra*:

Fabrics, with fast edges, not over 12 inches wide, and articles made therefrom; garters, suspenders, and braces; all the foregoing, wholly or in chief value of cotton or of cotton and india rubber, and not specially provided for_____17½% ad val.

The only witness in the case, who is affiliated with the plaintiff and with two other firms engaged in the business of importing goods from abroad and merchandising them throughout the United States, was shown to be familiar with the subject pistol belts, a sample of which was received in evidence as plaintiff's exhibit 1. It is an adjustable belt, 2¼ inches wide, with a metal clasp. Spaced vertically, at intervals of approximately 2½ inches, are a series of three perforations secured by metal eyelets. The parties have stipulated that this item has fast edges and is less than 12 inches in width.

The witness stated that he first saw belts of the kind here involved used by the Armed Forces as standard equipment from which to suspend a revolver, a holster, or a canteen kit, and that they are regulation Army issue for those troops who are required to carry such articles. They are also used by campers or hunters for the suspension of first aid kits, guns, and the like. He further testified that these belts are not worn for decency or comfort and are ordinarily removed when they are not needed for carrying any suspended articles.

Counsel for plaintiff does not challenge the collector's finding that the subject belts are in chief value of cotton, but contends that they are not clothing or articles of wearing apparel, for the reason that they are not worn for purposes of decency, comfort, or adornment.

Counsel's position is supported by the principle of the case of *Antonio Pompeo* v. *United States*, 40 Cust. Ct. 362, C.D. 2006, wherein the phrase "wearing apparel" in paragraph 1531 of the Tariff Act of 1930, as modified by prevailing trade agreement, was construed as embracing "clothes or covering for the human body worn for decency or comfort," or adornment, but as excluding "articles worn as a protection against the hazards of a game, sport, or occupation, or the prevention of injury."

The instant record clearly establishes that the subject belts fall within the category of articles excluded from the phrase "wearing apparel." They are not worn for any purpose of decency, comfort, or adornment, but merely as a convenient means of carrying and transporting certain types of small articles which can be suspended from any of the eyelets perforating the belts. The evidence is uncontroverted that these belts are removed when they are not required for such purposes. Indeed, it would seem that their relative weight alone would render them undesirable and unsuitable for use as articles of wearing apparel. In any event, since the belts are shown to have no *per se* usefulness as a covering or protection against the elements, or as items of personal comfort or adornment, but merely serve as a handy attachment for carrying small articles, they are not clothing or wearing apparel within the contemplation of paragraph 919, as modified, *supra*.

It remains to be seen whether they are articles made from fabrics with fast edges, not over 12 inches wide, as claimed by the plaintiff. On this subject the record contains only the stipulation of the parties that the involved items have fast edges and are less than 12 inches in width.

The term "fabrics with fast edges not exceeding twelve inches in width" as applied to cotton goods was first introduced as a tariff provision in paragraph 913 of the Tariff Act of 1922. In the more abbreviated form of "if with fast edges," the expression was earlier applied to narrow silk wares in paragraph 401 of the Tariff Act of 1909.

The silk provision was construed in the case of *United States* v. *Wertheimer Bros.*, 2 Ct. Cust. Appls. 515, T.D. 32249, as not applying to "cut edges," and, in the case of *M. Rice Co.* v. *United States*, 49 Treas. Dec. 22, T.D. 41289, as excluding edges which were not free from raveling.

When the broader language was adopted to describe both silk and cotton wares in the Tariff Act of 1922, Congress was provided with the following commentary in the 1921 Summary of Tariff Information, pages 882–883:

### COTTON SMALL WARES.

*Description and uses.*—Paragraph 912 [H.R. 7456] includes narrow woven fabrics which have not been ornamented after leaving the loom, manufactures of such narrow woven fabrics, and certain articles made by braiding or twisting together yarns or threads. These "small wares" are confined mainly to those of which cotton is the component material of chief value. Similar small-wares paragraphs are to be found in the other three textile schedules.

"Fabrics with fast edges not exceeding 12 inches in width" is an inclusive term for narrow woven fabrics, as distinguished from cloth which is a woven fabric over 12 inches in width. These narrow woven fabrics, such as tapes, ribbons, bandings, beltings, bindings, webbings, etc., are made on narrow-ware looms which produce a number of them simultaneously by means of numerous small shuttles positively driven by means of a rack and pinions. Articles made therefrom include bands, belts, cartridge belts, gun slings, webs, saddle girths, etc. * * *

\*          \*          \*          \*          \*          \*          \*

*Important changes in classification.*—This is the small-wares paragraph of the cotton schedule, and, with few exceptions, is confined to products of the narrow-ware or ribbon loom and to articles made from such products. It is therefore appropriately begun with the words "Fabrics with fast edges, not exceeding twelve inches in width, and articles made therefrom." In both manufacture and trade woven fabrics wider than 12 inches are known as cloth.

Fabrics with fast edges not exceeding 12 inches in width necessarily include all narrow woven wares and it is not necessary to mention bandings, beltings, bindings, webbings, tapes, ribbons, or other specific articles. Narrow strips cut from cloth cannot be so included, because they are not made with fast edges, and they would be dutiable as the cloth of which they are made. Articles made

from narrow woven fabrics necessarily include bands, belts, webs, etc., without specific mention.

We are of opinion that the foregoing clearly indicates that when Congress employed the phrase "fast edges," it meant to provide for permanent loom-woven edges of the type commonly described as selvages. Accordingly, the stipulated fact that the articles at bar have fast edges and are less than 12 inches in width, necessarily implies that the material from which they were made possessed the same qualifications.

Moreover, since it plainly appears from the sample of the imported merchandise which is in evidence that the material of which it was made is a woven product, there can be little question that prior to its being converted into finished belts, that material was a fabric. In the case of *United States* v. *Milbank, Leaman & Co.*, 14 Ct. Cust. Appls. 166, T.D. 41693, the term "fabric" was construed in accordance with its dictionary definitions as follows:

Webster's New International Dictionary thus defines the word "fabric":

Fabric, n. 5. Anything manufactured; in modern use, only, cloth that is woven or knit from fibers, either vegetable or animal; manufactured cloth; a textile fabric; as silks, or other fabrics.

6. The material of which a fabric is made.

This meaning, we believe, is the one generally applied to the word "fabric" when used in customs laws, by the courts, when a different construction is not necessitated by an apparent legislative intent.

There being no evidence of a contrary legislative intent, a different construction is not here required, and we hold that the merchandise at bar is properly dutiable, as claimed, at the rate of 17½ per centum ad valorem, pursuant to the provision in paragraph 912, as modified, *supra*, for articles made from fabrics with fast edges, not over 12 inches wide, wholly or in chief value of cotton.

Judgment will be entered accordingly.