(C.R.D. 76–7)

BECK DISTRIBUTING CORP. *v.* UNITED STATES

Court Nos. 66/1977, etc.

Port of New York

(Dated August 23, 1976)

*Allerton deC. Tompkins* for the plaintiff.
*Rex E. Lee,* Assistant Attorney General (*Ira J. Grossman*), trial attorney, for the defendant.

NEWMAN, Judge: This action is before me on plaintiff's motion for summary judgment under rule 8.2. Defendant opposes the motion on the ground that there exists a genuine issue as to a material fact that requires resolution by a trial.

The issue for determination is the proper tariff classification for certain motorcycle helmets imported from West Germany through the port of New York during the period of 1961 to 1967. Depending upon the date of entry, the merchandise was assessed with duty either at the rate of 21 cents per pound plus 17 per centum ad valorem under the provision in paragraph 1539(b) of the Tariff Act of 1930, as modified by T.D. 54108, for manufactures wholly or in chief value of any product of which any resin or resin-like substance is the chief binding agent; or at the rate of 19 cents per pound plus 15.5 per centum ad valorem, or at the rate of 17 cents per pound plus 14 per centum ad valorem, or at the rate of 15 cents per pound plus 12.5 per centum ad valorem under the provision for headwear of reinforced or laminated plastics in item 703.70 of the Tariff Schedules of the United States, or under item 703.70, as modified by T.D. 66–205.

Plaintiff claims that, depending upon the date of entry, the helmets are properly dutiable at the rate of 15, 13½ or 12 per centum ad valorem under the provision in paragraph 1531 of the Tariff Act of 1930, as modified by T.D. 54108, T.D. 55615 and T.D. 55649, for wearing apparel of which leather is the component material of chief value, or at the rate of 12 per centum ad valorem under the provision in item 703.65 of the Tariff Schedules of the United States for headwear of leather.

In support of its motion, plaintiff has submitted affidavits by Sam Guevara, plaintiff's import manager; and by Wolfgang E. Petzold, export director of Hans Romer of Neu-Ulm, West Germany, the manufacturer of the helmets. Guevara's affidavit was sworn to on April 21, 1976, shortly before the filing of plaintiff's motion; Petzold's

affidavit was executed on April 17, 1975, approximately a year before the filing of the motion.

Defendant submitted a memorandum of law, but submitted no controverting documents, in opposition to plaintiff's motion.

The sole question raised by the parties is whether the helmets in issue are in chief value of leather, as claimed by plaintiff.[1]

Guevara's affidavit avers that he was plaintiff's import manager from 1960 and in that capacity ordered the helmets from Hans Romer of Neu-Ulm, West Germany; that the helmets "were ordered to be made in such a way that leather would be the component material of chief value, and the details set forth in the affidavit of Wolfgang E. Petzold, the Export Director of Hans Romer dated April 17, 1975 giving the compositions and material costs have been the basis upon which orders for the specified helmets have been placed by me for Beck Distributing Corp., namely, they must be in chief value of leather"; and that "[d]uring the period from the middle of 1963 through the middle of 1967, the [helmets] * * * were classified by the Customs officials in New York in accordance with the entry paper as being in chief value of leather, the only exceptions were for errors made either by the agent who made entry or by a new import specialist who had not previously passed upon the tariff classification of the above specified helmets".

Petzold's affidavit avers that he had been the export director of the German manufacturer for the past 20 years and was "personally familiar with all purchase and manufacturing costs" of the helmets in question; and that he had "taken cost details from the records kept by * * * [his] Company and of the 'Breakdown of raw materials and manufacturing or processing costs' attached to the invoices, and know[s] that the figures set forth below are correct and accurate". Thereafter, the affidavit sets forth a breakdown for the years 1962 through 1967 of "the purchase prices of the raw materials used in each helmet, plus * * * [the] costs of manufacturing or processing such materials up to the time when they were ready to be assembled together or mounted".

Plaintiff argues that the affidavits of Guevara and Petzold establish that the helmets are in chief value of leather. Defendant contends, in its memorandum, that "these affidavits are so deficient in factual content that they should be given no weight at all in resolving the factual dispute in this case".

The well-settled rule for determining the component material of chief value is that "the value of the materials of which an article is composed shall be ascertained at the time when they have reached

---

[1] But see the discussion concerning *Antonio Pompeo* v. *United States*, 40 Cust. Ct. 362, C.D. 2006 (1958), *infra*.

such condition that nothing remains to be done to them except to put them together". *United States* v. *Jovita Perez*, 44 CCPA 35, 39, C.A.D. 633 (1957); *see also United States* v. *H. A. Caesar & Co.*, 32 CCPA 142, 143, C.A.D. 299 (1945). Thus it is plaintiff's burden to establish that the cost of the leather component of the helmets, including the cost of processing the leather prior to assembly, exceeded the cost of any other component at the time the helmets were assembled.

Initially, we shall consider Guevara's affidavit. There is no showing that the affiant had any personal knowledge of or control over the manufacturer's actual costs incurred for the materials and processing thereof prior to assembly into the helmets. What costs the importer may have *specified* in its orders for component materials and the processing thereof simply does not prove what actual costs were *incurred* by the manufacturer.

Plaintiff relies heavily upon Guevara's averment that other shipments (with some exceptions) of helmets were classified by the customs officials in New York on the basis that they were in chief value of leather. However, such averment is irrelevant since plaintiff did not claim in its protests that the challenged assessments constituted an unlawful change of an established and uniform classification practice. *See Carson M. Simon & Co.* v. *United States*, 57 Cust. Ct. 224, C.D. 2768 (1966); *Bauer Alphabets, Inc.* v. *United States*, 54 Cust. Ct. 255, C.D. 2540 (1965); *Pacific Mutual Sales Co.* v. *United States*, 36 Cust. Ct. 100, C.D. 1758 (1956). And, in any event, such established and uniform practice is not at all shown by Guevara's affidavit.

Turning now to Petzold's affidavit, I find that it has several serious deficiencies. Rule 8.2(f) provides that supporting affidavits, "shall be made on personal knowledge, shall set forth such facts as would be admissible in evidence, and *shall show affirmatively that the affiant is competent to testify to the matters stated therein*" (emphasis added). Although Petzold's affidavit alleges his personal familiarity with "all purchase and manufacturing costs" related to the helmets in question, no basis for his asserted personal knowledge is affirmatively shown in the affidavit. Thus, for example, there is no indication that Petzold ordered or purchased the materials, or that he disbursed payment for the materials, or that he had any responsibility for manufacturing or processing the materials, or that he personally kept or supervised the keeping of cost records. In point of fact, Petzold's affidavit is completely devoid of any indication respecting his duties as "export director". Under these circumstances, the affidavit falls far short of showing *affirmatively* that the affiant possessed the requisite personal knowledge and was competent to testify concerning the matters stated in his affidavit, as required by rule 8.2(f).

Aside from the lack of an affirmative showing of the affiant's personal knowledge and competence to testify concerning the material and manufacturing costs, the affidavit is significantly lacking in cost details. While the affidavit avers that Petzold consulted "cost details from the records kept by [his] * * * company", no such records (or copies thereof) were produced in support of the affidavit.[2] Moreover, the affidavit itself does not disclose the separate costs of the materials and the labor and other expenses incurred by the manufacturer in processing those materials to the point at which they were ready for assembly into the finished helmets. While a separation of the costs of materials and the costs of processing them may not be necessary in every case, here it has been noted that all cost figures purportedly remained unchanged throughout 1962, 1963, and 1964, without any explanation of how the cost figures were calculated or why *all of the various costs remained the same to the penny over the three-year period.*[3] Defendant, with reasonable cause for doubt, has challenged these unvarying cost figures as "highly suspect on their face" and as "preposterous, especially in view of the fact that the listed cost of each material supposedly includes the cost of pre-assembly improvements made upon the material". Hence, defendant justifiably asserts that "[i]t is extremely unlikely that the costs of all of these improvements did not vary by so much as one penny for three years".

It is emphasized that unlike testimony obtained from a witness residing in a foreign country pursuant to a commission or letters rogatory (rule 7.7), which is subject to cross-interrogatories (rule 7.7(c)), affidavits offered in support of a motion for summary judgment (rule 8.2(f)) are ex-parte statements not subject to cross-examination. Inasmuch as ex-parte affidavits lack the safeguard of cross-examination, the court must give close scrutiny to such affidavits, especially here, where the issue relates to the costs of component materials for merchandise manufactured and shipped some 8 to 14 years prior to the execution of the affidavit, and the cost figures stated therein are based upon unproduced (and possibly presently unavailable) records. In this connection, compare the very recent decision of our appellate court in *Andy Mohan, Inc.* v. *United States*, 63 CCPA 104, C.A.D. 1173, 537 F. 2d 516 (1976), respecting proof of the cost of materials, fabrication, and packing for the purpose of constructed value. There, the court stated (63 CCPA at 107):

> * * * The Customs Court correctly scrutinized the affidavits with care, because, being exparte, they were not subject to cross-examination. Moreover, they are entitled to little weight,

---

[2] It is noted that counsel for plaintiff states in his memorandum that "any pertinent foreign records pertaining to the years 1962-1967 would *now* be difficult to obtain". (Emphasis added.) The cost records, however, were apparently available in April *1975* when Petzold allegedly examined the records of his company for purposes of executing his affidavit for use in this litigation.

[3] Even the costs of unidentified "miscellaneous materials" purportedly remained unchanged over the three-year period.

being incomplete and based on unproduced records, and having been executed years after the transactions to which they attest.

Under the circumstances herein, all elements of the asserted costs and the basis of Petzold's personal knowledge and competence to testify concerning them should have been affirmatively disclosed in his affidavit.

Although defendant did not file a counter-affidavit (or any other controverting evidence) in opposition to plaintiff's motion, under the circumstances presented here, the court is not compelled to accept as true the cost figures disclosed in the Petzold affidavit. *Cf. Subin* v. *Goldsmith*, 224 F. 2d 753, 759 (CA 2, 1955), *cert. denied*, 350 U.S. 883 (1955). In view of the substantial deficiencies in Petzold's affidavit, especially as it relates to cost data peculiarly within the knowledge of the German manufacturer, I conclude that there is a genuine issue of fact, and that plaintiff is not entitled to summary judgment.

Finally, although the parties have limited the issue to component material of chief value, and have raised no issue concerning common meaning, I have noted that helmets, such as those involved here, have been held not to be within the common meaning of the term "wearing apparel" in paragraph 1531 of the Tariff Act of 1930, as modified by T.D.'s 52373 and 52476. *Antonio Pompeo* v. *United States*, 40 Cust. Ct. 362, C.D. 2006 (1958). Indeed, *Pompeo* may be deemed *stare decisis* insofar as plaintiff's claim under paragraph 1531 is concerned. *Cf. United States* v. *L. Batlin & Son, Inc.*, 61 CCPA 17, C.A.D. 1111, 487 F. 2d 916 (1973).

Accordingly, plaintiff's motion is denied.