(C.R.D. 77–2)

## JIMLAR CORP. *v.* UNITED STATES

Court No. 74–8–02201

(Dated January 14, 1977)

*Shaw and Stedina* (*Charles P. Deem* of counsel) for the plaintiff.
*Rex E. Lee*, Assistant Attorney General (*Ira J. Grossman*, trial attorney), for the defendant.

MALETZ, Judge: This is a motion by plaintiff for summary judgment pursuant to rule 8.2. Defendant opposes the motion on the ground that there exists a genuine issue as to a material fact that requires resolution by a trial.

The action involves the proper tariff classification of an entry of footwear originating in and exported from Taiwan and imported at the port of San Francisco in 1973. The imported footwear was classified under item 700.80 of the tariff schedules, as modified by T.D. 68–9, as footwear with uppers of fibers other than vegetable fibers and assessed duty at the rate of 12.5% ad valorem. Plaintiff claims the footwear is properly classifiable under item 700.70, as modified, as footwear with uppers of vegetable fibers dutiable at the rate of 7.5% ad valorem.[1]

Against this background, the single issue in the case is whether the imported footwear has uppers in chief value of vegetable fibers (i.e., cotton), as claimed by plaintiff, or whether the uppers are in chief value of man-made fibers (i.e., rayon and/or nylon) as determined by the government. Put most succinctly, the question is whether the uppers are in chief value of cotton or in chief value of man-made fibers.

---

[1] More specifically, the relevant provisions of the tariff schedules read as follows:

Footwear, with uppers of fibers:

\*　　　\*　　　\*　　　\*　　　\*　　　\*　　　\*

    With soles of material other than leather:
    [Claimed]

| | | |
|---|---|---|
| 700.70 | With uppers of vegetable fibers_____ | 7.5% ad val. |

\*　　　\*　　　\*　　　\*　　　\*　　　\*　　　\*

    [Classified]

| | | |
|---|---|---|
| 700.80 | Other_____ | 12.5% ad val. |

It is to be noted that under general headnote 9(f)(i) of the tariff schedules the term "of" when used (as here) between the description of an article and a material means that the article is wholly or in chief value of the named material.

It is of course basic that the proper method of determining the chief value of the imported uppers is to ascertain the costs of the separate component materials at the time when they have reached the state when nothing further need be done to them except combine them into the completed article. E.g., *United States* v. *Jovita Perez*, 44 CCPA 35, 39, C.A.D. 633 (1957). It is also settled that the value of each component in an article includes not only the cost of the basic material, but work done on it to bring it to the point of assembly, and thus in a subassembly of two or more components, the costs of subassembling are to be added to the various components in proportion to their relative quantities or weights. *Field & Co.* v. *United States*, 7 Ct. Cust. Appls. 332, T.D. 36876 (1916); *N. Erlanger Blumgart Co., Inc.* v. *United States*, 57 CCPA 127, C.A.D. 991, 428 F. 2d 860 (1970).

In light of these principles, to support its position that the uppers were in chief value of cotton, plaintiff relies on an affidavit by Chin Yi-Chiung, co-owner since May 1969 of Kai-Tai Enterprise Co., Ltd., the manufacturer of the imported footwear. In his affidavit, dated March 27, 1976, Chin attests that he is "thoroughly familiar with and supervise[s] all aspects of * * * [the company's] business operations"; that he "participate[s] actively in the day-to-day operations of the company," and that he has "personal knowledge of the costs of the materials * * * [the company] purchase[s] to manufacture shoes." Considering that Chin was thus co-owner of the company, was familiar with and supervised *all* aspects of the company's business operations,[2] participated actively in the day-to-day operations of the company, and had personal knowledge of the costs of the materials the company purchased to manufacture shoes, it must be concluded that in contradistinction to the situation in *Beck Distributing Corp.* v. *United States*, 77 Cust. Ct. 158, 160, C.R.D. 76-7 (1976) (slip op. pp. 5-6) Chin's affidavit shows affirmatively that, as required by rule 8.2(f), the affiant was competent to testify to the matters stated therein.

Beyond this, Chin's affidavit goes on to say (p. 4) that "[b]ased on the cost and production records of my company and my personal knowledge, I have calculated the costs at the time of final assembly of the various upper components of a size 7 shoe." On the basis of these calculations by Chin, the cotton value of the upper was approximately 12 cents per shoe while that of the man-made fiber components was approximately 7 cents.

However, for the reasons that follow, the values thus calculated by Chin of the component material costs cannot be afforded probative weight. *Cf. Henry A. Wess, Inc.* v. *United States*, 68 Cust. Ct. 201,

---

[2] The court interprets Chin's affidavit to mean that as co-owner of the company with the responsibility of supervising *all* aspects of the company's business operations, the firm's business records were under Chin's supervision.

203, C.D. 4361 (1972). It is true that the business records of Chin's company need not be submitted to the court as part of his affidavit. *Ibid.* For as stated in *J. C. Penny Purchasing Corporation* v. *United States*, 77 Cust. Ct. 48, 59, note 8, C.D. 4671 (1976) (slip op. p. 19):

> * * * [W]ith regard to voluminous documents, 4 *Wigmore on Evidence* (Chadbourn rev. 1972) § 1230, pp. 535–41 indicates that the convenience of trials demands that summaries of complicated, burdensome or voluminous original records prepared by competent individuals be offered in evidence as the only practicable way of receiving such proof. The most commonly recognized application of the principle stated above is that by which business transactions are allowed to be shown by schedule or summary. * * *

Notwithstanding this permissible latitude, Chin's affidavit is still lacking in numerous material respects. For example, as stated previously, Chin attests that "[b]ased on the cost and production records of my company and my personal knowledge, I have calculated the costs at the time of final assembly of the various upper components of a size 7 shoe." In these circumstances, it is important to know in his calculation of the costs what figures Chin took from the cost and production records of his company and what figures were based on his personal knowledge. As to these matters, Chin's affidavit is totally silent. Nor is there any indication in Chin's affidavit as to the content of his company's cost and production records or indeed whether they still exist. And finally, there is a total absence of any supporting documentation for the claimed cost data. *Cf. J. C. Penny Purchasing Corporation* v. *United States, supra,* slip op. pp. 18–19. In view of these considerations, Chin's affidavit cannot form the basis for summary judgment in plaintiff's favor, and plaintiff's motion for such judgment is hereby denied.