(C.R.D. 77–3)

FORTUNE STAR PRODUCTS CORP. *v.* UNITED STATES

Court No. 72–7–01497

(Dated February 11, 1977)

*Siegel, Mandell & Davidson* (*Brian S. Goldstein* of counsel) for the plaintiff.
*Irving Jaffe,* Acting Assistant Attorney General (*Herbert P. Larsen,* trial attorney), for the defendant.

MALETZ, Judge: This case concerns the proper tariff classification of merchandise invoiced as "Eskimo Doll Radios" that was imported from Japan via the port of New York. The sample consists of a figure of a human baby, having a head, arms and feet composed of a soft rubbery material. It has brown hair and is clothed in a soft, plush, blue and white outfit with a hood made of the same material. The figure is approximately 13 inches high and 10 inches wide with arms extended. It cannot stand or sit up unsupported.

Protruding on the back portion of the body are two black radio knobs, one of which serves as an on/off switch and volume control for a battery-powered transistor radio which is housed inside the body. A similar protruding black knob about 1 inch adjacent to the first knob is the station selector. Recessed in a zippered compartment in the rear interior of the body is the transistor radio (with dimensions of about 3″ by 2¼″ by 1″) which is connected to a radio speaker about 2 inches in diameter located in the front interior. The parties agree that the merchandise is not a combination article but rather is an entirety for tariff purposes.

The imported merchandise was classified by the government as "dolls" under item 737.20 of the tariff schedules, as modified by T.D. 68-9, and assessed duty at the rate of 24% or 21% ad valorem, depending upon the date of entry.

Plaintiff claims that the merchandise is properly classifiable under item 685.23, as modified by T.D. 68-9, as a solid-state (tubeless) radio receiver and should be assessed with duty at the rate of 11% or 10.4% ad valorem, depending upon the date of entry. Alternatively, plaintiff claims that the merchandise is more than a doll and more than a radio and is thus classifiable under item 688.40, as modified by T.D. 68-9, as an electrical article, not specially provided for, dutiable at the rate of 8% or 6.5% ad valorem, depending on the date of entry.[1]

Quoted below are the relevant provisions of the Tariff Schedules of the United States (19 U.S.C. 1202, as modified by Pres. Proc. 3822, T.D. 68-9, 82 Stat. 1455):

Schedule 7, Part 5, Subpart E. — Models; Dolls, Toys, Tricks, Party Favors

Subpart E headnotes:

    1. The articles described in the provisions of this subpart (except parts) shall be classified in such provsions, whether or not such articles are more specifically provided for elsewhere in the tariff schedules, . . .

\*     \*     \*     \*     \*     \*     \*

[1] Defendant has claimed in the alternative that the merchandise is properly classifiable as toys, not specially provided for, dutiable under item 737.90 at the rate of 24% or 21% ad valorem, depending on the date of entry. However, defendant adds—and the court agrees—that this alternative claim need not be considered for purposes of the present cross-motion, in view of the greater specificity of the original government classification.

Classified under:

737.20     Dolls, and parts of dolls including doll clothing_____ 24% or 21% ad val. [depending on date of entry]

Claimed under:

Radiotelegraphic and radiotelephonic transmission and reception apparatus; radiobroadcasting and television transmission and reception apparatus, and television cameras; record players, phonographs, tape recorders, dictation recording and transcribing machines, record changers, and tone arms; all of the foregoing, and any combination thereof, whether or not incorporating clocks or other timing apparatus, and parts thereof:

\*     \*     \*     \*     \*     \*     \*

Other:

685.23      Solid-state (tubeless) radio receivers_____ 11% or 10.4% ad val. [depending on date of entry]

Alternatively claimed under:

688.40      Electrical articles, and electrical parts of articles, not specially provided for___ 8% or 6.5% ad val. [depending on date of entry]

The essential issue in this setting is whether the imported article is a "doll," as classified, or is more than a doll, as claimed by plaintiff. On this issue, plaintiff contends that *United States* v. *New York Merchandise Co., Inc.*, 58 CCPA 53, C.A.D. 1004, 435 F.2d 1315 (1970) is dispositive here. In *New York Merchandise* the imported article consisted of a stuffed, plush-covered poodle dog, about 12 inches in overall length, and containing in a concealed, zippered compartment a battery-powered transistor radio which was operated by control knobs protruding out from the nose and chest parts of the stuffed animal. The government classified the article under item 737.30 of the tariff schedules as a stuffed toy figure of an animate object and assessed duty at 18% ad valorem. The appellate court affirmed the decision of this court, sustaining the protest and holding that the importation was "more than" a toy figure of an animate

object and that it was properly classifiable under item 685.22 as a radio dutiable at 12½%. See *New York Merchandise Co., Inc.* v. *United States*, 62 Cust. Ct. 283, C.D. 3746, 305 F. Supp. 25 (1969). The court concluded that the poodle dog figure was more than a toy figure of an animate object on the basis that the main commercial value of the article was derived from the radio component and that the radio contributed substantially to the uniqueness and value of the entire article. In reaching this conclusion, the court regarded the following facts in addition to the sample as determinative: The radio portion of the imported article constituted the component of chief value of the entire article; the wholesale price for the imported article was approximately three times that of comparable stuffed animals sold by the importer as toys for children; the federal excise tax applicable to radios was paid upon sale of the imported article; between 1965 and 1966 more than 140,000 of these articles were imported and sold through gift shops or department stores where they were displayed on counters with radios and other electric articles and were advertised and sold as "novelty radios." See *United States* v. *New York Merchandise Co., Inc., supra*, 58 CCPA at 55–56.

With these considerations in mind, plaintiff contends that the merchandise in the present case is similar in all material respects to the merchandise in *New York Merchandise* and that the present merchandise should accordingly be classified under item 685.23 as other solid-state (tubeless) radio receivers, as claimed. More particularly, plaintiff insists that as in *New York Merchandise* the main commercial value of the article was derived from the radio component and that the radio component contributed subsequently to the uniqueness of the entire article (as opposed to defendant's argument that the radio component was merely an incidental part of the whole product). To support its contention, plaintiff has submitted an affidavit by George Gluck, corporate secretary and executive officer of the plaintiff-importer, which position he has held since 1960. To the extent relevant, Gluck attests in his affidavit that plaintiff has been in existence since 1950 and has imported and sold such items as consumer electronics articles, lighters, umbrellas, etc.; that throughout the period he has been with the company his duties have included the purchase, importation and sale of these articles, including the Eskimo Doll Radio; that *"based upon my personal knowledge of the costs associated with the production of our imported products, the predominant cost factor for the imported article is attributable to the radio and not the stuffed figure exterior"* (emphasis added); and that the "main commercial value of the article is derived from the radio component which contributes substantially to the uniqueness and value of the entire article."

Continuing, Gluck states in his affidavit that his company has sold the imported item through jewelry stores, department stores, electronics outlets and novelty outlets where it was sold with other radios and similar merchandise; that the item has always been considered in the electronics home-products field as a novelty radio; and is of a class of radio which includes such items as "puppy radios" and "poodle dog radios" as represented in plaintiff's catalogue.

Finally, Gluck attests that he does not consider that the article in question falls within the broad understanding of the term "doll"; that it is his opinion, based on years of experience in the purchase, sale and use of novelty radios, that the article in question is not chiefly used for amusement of children or adults; and that, rather, he considers the item to be a novelty radio.

One of the factors supporting the outcome of the *New York Merchandise* case was that the parties had stipulated that the radio portion was the component in chief value of the overall poodle dog radio. Also, additional information as to the price aspect was provided by a company which assembled and distributed similar animal radios. Plaintiff herein attempts to prove the same set of facts by statements made by its affiant, Gluck, which, however, do not constitute factual proof. Plaintiff is *not* the manufacturer of the merchandise, yet the affiant claims that he has "personal knowledge of the costs associated with the production of our imported products." Lacking is any basis shown in the affidavit for Gluck's asserted personal knowledge that "the predominant cost factor for the imported article is attributable to the radio and not the stuffed figure exterior." He does not state that he has ever discussed the manufacturer's actual costs or that he had any responsibility for manufacturing, processing or purchasing the materials that make up the Eskimo Doll Radio. No cost details are delineated and no records were produced in support of the affidavit.

Rule 8.2(f) of this court requires that affidavits offered in support of a motion for summary judgment "shall be made on personal knowledge, shall set forth such facts as would be admissible in evidence, and shall show affirmatively that the affiant is competent to testify to the matters stated therein." The lack of documentation, cost details, and explanation, as to the basis of Gluck's knowledge of the costs of the various component materials and parts of the merchandise, is a fatal defect in the affidavit. As a result, his affidavit cannot be given any weight in resolving the crucial question as to the predominant cost factor of the merchandise. See *Beck Distributing Corp.* v. *United States*, 77 Cust. Ct. 158, C.R.D. 76–7 (1976). *Cf. Jimlar Corp.* v. *United States*, 78 Cust. Ct., 182 C.R.D. 77–2 (1977).[2] Nor can it be

---

[2] In view of the defectiveness of the affidavit in this major respect, it is unnecessary to reach the question as to whether or not the affidavit has any probative weight on the question as to whether the imported articles were in fact merchandised and sold as "novelty" radios. See *United States* v. *New York Merchandise Co., Inc., supra*, 58 CCPA at 56.

determined by an examination of the sample alone whether the radio is or is not an incidental feature of the article. In other words, reliance on the sample itself is not helpful in resolving the question as to whether for tariff purposes the importation is a doll or more than a doll. For the foregoing reasons, plaintiff's motion for summary judgment must be denied.

We turn now to defendant's cross-motion for summary judgment in support of which it has submitted the affidavits of two individuals who have been employed in the doll business for a number of years. Thus, an affidavit by Will Goldsmith of New York states that he has been employed in the doll business for the past 30 years; that for the past 5 years he has been assistant sales manager for a firm manufacturing dolls; and that prior to that he served as a national account executive for another doll manufacturer after holding the position for 5 years as sales manager for yet another doll manufacturer. Goldsmith declared in his affidavit that he was personally familar with the doll industry and with all types of merchandise marketed as dolls; that he has examined the sample in the present case; that in his opinion the sample possesses all of the characteristics necessary to be considered a doll as that term is known in the trade "and is in fact a doll, within the common meaning of that word." Goldsmith's affidavit goes on to state that it is his "further opinion that the inclusion of the radio in this item does not make the item more than a doll"; and that dolls may incorporate additional novelty features (such as tears, voices, phonographs, etc.) which do not deter from the doll's primary purpose and function of being a doll. Finally, Goldsmith attests that it is his further opinion, based upon the knowledge of the marketing of dolls, that the sample would be chiefly used for the amusement of children.

Rose Chais, defendant's second affiant, attests in her affidavit that she has worked in the doll business for over 25 years during all of which time she has been employed by the New York Doll Hospital, New York City; that her duties at that hospital involve appraising and repairing dolls of all kinds and acting as a seller-buyer of antique dolls. The affiant states that she has examined the sample involved here and has concluded that since it has arms, legs and hair it is a doll; that the presence of the radio does not make it something other than a doll since a doll "can have anything one wants to put inside it and still be a doll"; and that the primary use of the sample is a slumber doll to put children to sleep.

Assuming arguendo that the two foregoing affiants were competent to testify to the matters stated in their affidavits and that their opinions would be admissible in evidence (which is highly doubtful) it is obvious that their opinions that the importations come within the common meaning of the term "dolls" are totally inappropriate and

can be given no probative weight. For the common meaning of a tariff term is a question of law and an affidavit is no place for opinions—such as here contained—for conclusions of law. See 6 Moore's *Federal Practice* (2d ed. 1976) pp. 56–1312 – 56–1318. In these circumstances, defendant's cross-motion for summary judgment must also fail.

To sum up, both plaintiff's motion for summary judgment and defendant's cross-motion for summary judgment are denied.