(C.R.D. 78–15)

## G. M. RUBBER INDUSTRIES, INC. *v.* UNITED STATES

Court No. 75–5–01099

Port of San Juan

(Decided September 21, 1978)

*Siegel, Mandell & Davidson* (*Herbert T. Posner* of counsel) for the plaintiff.
*Barbara Allen Babcock,* Assistant Attorney General (*Sidney N. Weiss,* trial attorney), for the defendant.

MALETZ, Judge: This action, which is before the court on cross-motions for summary judgment, involves the dutiable status of merchandise described on the commercial invoices as rubber overshoes, style Nos. 110 and 310 imported from Brazil by plaintiff, and entered at the port of San Juan during the period March 1973–January 1974. The merchandise was classified by the government under item 700.52 of the Tariff Schedules of the United States (TSUS) as footwear of rubber or plastics, the uppers of which do not extend above the ankle, and assessed duty at the rate of 25 percent ad valorem. Plaintiff challenges this classification and claims the importations are properly classifiable as "Articles not specially provided for, of rubber or plastics: Other," under item 774.60, dutiable at 8.5 percent ad valorem.

The pertinent provisions of TSUS read as follows:

*Classified under:*

Footwear (whether or not described elsewhere in this subpart) which is over 50 percent by weight of rubber or plastics or over 50 percent by weight of fibers and rubber or plastics with at least 10 percent by weight being rubber or plastics:

Hunting boots, galoshes, rainwear, and other footwear designed to be worn over, or in lieu of, other footwear as a protection against water, oil, grease, or chemicals or cold or inclement weather, all the foregoing having soles and uppers of which over 90 percent of the exterior surface area is rubber or plastics (except footwear with uppers of nonmolded construction formed by sewing the parts thereof together and having exposed on the outer surface a substantial portion of functional stitching):

\*    \*    \*    \*    \*    \*    \*

700.52    Footwear (except footwear provided for in item 700.51), the uppers of which do not extend above the ankle, designed for use without closures, whether or not supported or lined____    25% ad val.

*Claimed under:*

Articles not specially provided for, of rubber or plastics:

\*    \*    \*    \*    \*    \*    \*

774.60    Other_____    8.5% ad val.

\*    \*    \*    \*    \*    \*    \*

·Plaintiff alleges there are no genuine issues to be tried with respect to the following material facts: (1) That the imported merchandise is used in the manufacture of "The Ice Gripper," which is an article of rubber footwear designed for safer walking on ice and packed snow; (2) that the sample attached to an affidavit and report of one of plaintiff's affiants is similar in all material respects to the imported merchandise; (3) that the merchandise in its imported condition cannot be worn as a "rubber" as it possesses very little traction, thereby rendering it unsafe for the wearer; (4) that the imported merchandise is never sold or offered for sale in its imported condition; (5) that after importation a mineral grit is applied to the sole and is affixed thereto with a rubber adhesive; (6) that the cost of the grit and its application to the imported merchandise after importation exceeds the value of the imported merchandise; and (7) that the merchandise as imported is in chief value of rubber.

Defendant agrees that the merchandise as imported is in chief value of rubber. It alleges that there are no genuine issues to be tried with respect to the following material facts: (1) That in its condition as imported the merchandise is designed to be worn over other footwear and is designed to protect the shoe over which it is worn from water, oil, grease, chemicals, and inclement weather; (2) that the merchandise is marketable as an overshoe, whether or not it is sold in its imported condition, and is therefore of a class or kind of articles chiefly worn over other shoes as protection from water, oil, grease, chemicals, and inclement weather; (3) that the imported merchandise in all entries is identical to the pair of overshoes tagged "CE 902148—7/19/73, style No. .110, summons No. 75–5–01099, 5/9/75, protest No. 49094000039, 8/19/74"; (4) that the imported merchandise responded to the term "footwear" at the time of its importation, since it possesses the essential characteristics of "footwear" of the overshoe type used as a protection against water, oil, grease, chemicals, and inclement weather; and (5) that post-importation improvements in the traction characteristics of the imported footwear, if there were any, are immaterial as the merchandise was already footwear before such alleged improvements were made. Finally, defendant asserts there is a genuine dispute as to the specific traction and construction of the imported merchandise.

Upon considering the affidavits presented by the parties and the supporting exhibits, the court must conclude that genuine issues of material fact exist which require a trial. For example, the record is not clear as to what merchandise was actually imported. Thus, the court is unable to determine the nature and characteristics of the importations in issue. See, e.g., *L. B. Watson Co., a/c Murphy Reir, Inc.* v. *United States*, 75 Cust. Ct. 185, 187, C.R.D. 75–5 (1975). Further, there appears from the conflicting affidavits of the parties

genuine issues of fact as to, among other things, (1) whether or not the imported merchandise can, in its condition as imported, be worn as a "rubber" or overshoe; (2) whether or not at the time of importation the merchandise is marketable as an overshoe; and (3) the specific traction and construction of the imported merchandise.

Since triable issues of fact exist, both plaintiff's motion for summary judgment and defendant's cross-motion for summary judgment are denied. See, e.g., *Fortune Star Products Corp.* v. *United States*, 78 Cust. Ct. 184, C.R.D. 77–3 (1977).