*Youngstown Sheet & Tube Co. et al.* v. *Sawyer,* 343 U.S. 579, 629 (1951).

For the reasons expressed above it is hereby

ORDERED, ADJUDGED, AND DECREED that the Department of Commerce shall

1. Provide to Zenith's counsel all computerized data consisting of so-called SAS data sets used by said Department in calculating the final results of the administrative review under challenge herein, such data sets to be transferred to Zenith's counsel in the form of sequential data files recorded on magnetic tape, together with the instructions (also recorded on magnetic tape) used to prepare such files;

2. Provide to Zenith's counsel machine-readable copies, recorded on magnetic tape, of the SAS computer programs used to generate the final results; and

3. Render to Zenith's counsel such cooperation and reasonable assistance as is necessary to enable them to process the computerized data, including, but not necessarily limited to, conferring with Zenith's counsel and automated data processing ("ADP") expert.

In all other respects, including the motion for sanctions and the motion for oral argument, the motions are denied.

UNITED STATES OF AMERICA, PLAINTIFF *v.* F.H. FENDERSON, INC., DEFENDANT

Court No. 84–07–01008

Before CARMAN, *Judge*

(Decided December 5, 1986.)

*Richard K. Willard,* Assistant Attorney General; David M. Cohen, Director, Department of Justice, Commercial Litigation Branch, Civil Division *(Platte B. Moring, III)* for plaintiff.

*Doherty and Melahn (William E. Melahn)* for defendant.

MEMORANDUM OPINION AND ORDER

CARMAN, *Judge:* The United States (Government) commences this action against defendant F. H. Fenderson, Inc. (Fenderson) to recover a civil penalty for an alleged negligent violation of section 592 of the Tariff Act of 1930, as amended, 19 U.S.C. § 1592 (1982). The complaint alleges the defendant, as importer of record, negligently entered, introduced, or caused to enter or introduce a series of entries of merchandise (crabmeat) from Canada into the commerce of the United States by means of false documents that incorrectly stated the dutiable values for the merchandise. These improper state-

ments resulted in a potential loss of revenue in the amount of $834.08.

Government moves under Rule 56 of this Court for summary judgment on the grounds there are no genuine issues of material fact as to the case. Fenderson opposes Government's motion and contends there are genuine issues of material fact in dispute. Fenderson cross-moves for summary judgment on the same grounds as Government's motion and contends Government, through its Customs branch, is attempting to illegally assess multiple penalties for the same alleged violation of 19 U.S.C. § 1592, has failed to follow its own regulations with respect to voluntary disclosure, and has violated Fenderson's rights under 19 U.S.C. § 1618 by refusing to accept a second supplemental petition. Based upon the following discussion, Government's motion for summary judgment is denied, and Fenderson's cross-motion for summary judgment is also denied.

## UNCONTROVERTED FACTS

The following facts are not in dispute:

From approximately May 1981, to and including September 1981, the defendant, F. H. Fenderson, a customhouse broker, as importer of record, entered, introduced, or caused to enter or introduce merchandise (crabmeat) from Canada into the Commerce of the United States at the Port of Calais, Maine. Fenderson as importer of record filed seven consumption entries on behalf of Landry & Landry, an exporter, utilizing documents supplied by Landry & Landry. On each of the pro forma invoices accompanying the seven entries in question, the Canadian exporter certified the "currency of value" was Canadian. On each of the Special Customs invoices accompanying the entries in question, the Canadian exporter stated the invoice price for the merchandise involved and certified Canadian currency was used. Fenderson, as customhouse broker, relied on these certified forms in filing the entries on behalf of the exporter, and, as importer of record, converted the invoiced amount to an equivalent amount in United States dollars.

Government claims the entries and other documents were false in that they stated incorrect dutiable values of the merchandise. The invoices submitted with the entries indicated the transactions were in Canadian money, when, in fact, Government argues, payment for the transactions was made in the amount shown on the invoice but in United States currency. Government contends this conversion from Canadian dollars to United States dollars was a negligent act by Fenderson which resulted in a potential loss of revenue in the amount of $834.08.

On September 30, 1981 the District Director at Portland, Maine sent a Prepenalty Notice, covering 12 entries, to Landry & Landry, the exporter of the merchandise and the preparer of the invoices. These 12 entries included the seven entries which are at issue in this case. On October 21, 1981, Landry & Landry responded to the

Prepenalty Notice and sent a check for $1,657.73 drawn on a Canadian bank. The check was returned two days later because it was not drawn on a United States Bank.

By memorandum dated November 3, 1981, Fenderson tendered its check for $1,657.73 as a "Voluntary Tender" on behalf of Landry & Landry; a receipt dated November 5, 1981 was issued by Customs. Notice of Penalty in the amount of $6,630.32 was issued to Landry & Landry on November 4, 1981, and Landry & Landry petitioned for relief by letter dated November 24, 1981. A decision was issued to Landry & Landry's attorney on January 18, 1982 with a finding of gross negligence but mitigating the penalty to $3,315.46. This amount was forwarded to Customs by memoranda dated March 4, 1982, and Customs issued a receipt.

A Prepenalty Notice covering seven of the same entries as involved the Landry & Landry penalty was sent to Fenderson. The response was filed by Fenderson on October 26, 1982. A Penalty Notice in the amount of $1,668.16 was issued to Fenderson on November 6, 1981 with a culpability determination of negligence. Fenderson filed a petition on January 3, 1982, and a decision was made on January 11, 1982 reducing the penalty to $250.00 in accordance with the guidelines in the Fines, Penalties and Forfeitures Handbook as it relates to brokers. Additional information in the form of a supplemental petition dated February 7, 1982 was filed with Customs, and a response dated February 9, 1983 from the Regional Commissioner was transmitted through the District Director to Fenderson on February 18, 1983.

Based on these communications and transactions among Customs, Fenderson, and Landry & Landry, Fenderson argues Government, through its Customs branch, is illegally assessing multiple penalties; has failed to follow its own regulations; and has violated Fenderson's rights in refusing to accept the second supplemental petition.

### DISCUSSION

The Court of Appeals for the Federal Circuit has set forth the standards this Court must utilize in determining a summary judgment question as follows:

> [S]ummary judgment under Rule 56, Fed. R. Civ. P., is entirely appropriate * * * where there is no genuine issue of material fact and the movant is entitled to judgment as a matter of law. * * * The movant bears the burden of demonstrating absence of all genuine issues of material fact, * * * the * * * court must view the evidence in a light most favorable to the nonmovant and draw all reasonable inferences in its favor, * * * and must resolve all doubt over factual issues in favor of the party opposing summary judgment.* * *

*SRI International* v. *Matsushita Electric Corporation of America*, 775 F.2d 1107, 1116 (Fed. Cir. 1985) (citations and footnotes omitted). This Court recognizes: "[it] would be manifestly unfair and violative

of due process to deprive [a party] of its day in court where basic factual issues require resolution." *Yamaha International Corp.* v. *United States,* 3 C.I.T. 108 (1982).

As an initial matter, Government has submitted its motion for summary judgment supported by documents referred to as Copp's Deposition Exhibits. Rule 56(f), Rules of the Court of International Trade sets forth, in part: "Supporting and opposing affidavits shall be made on personal knowledge, shall set forth such facts as would be admissible in evidence, and shall show affirmatively that the affiant is competent to testify to the matters stated therein." Mr. Copp has been referred to as an Assistant District Director of the Customs Portland Office in some of the supporting papers submitted in this case, but not in any affidavit, and certainly not in any manner which explains his competency to testify. There has not been submitted any documentation or explanation as to the basis of whose knowledge these documents truly exist. We find no facts that would be admissible in evidence to show Copp competent to testify in these matters or to show the admissibility of these documents. A lack of documentation and explanation as to the basis of an affiant's knowledge will constitute a fatal defect on the face of the motion. *Fortune Star Products* v. *United States,* 78 Cust. Ct. 184, C.R.D. 77–3 (1977).

Of more immediate concern to this Court regarding the motion for summary judgment, notwithstanding these defective documents, is that Fenderson has submitted information which raises material issues of fact which will require resolution upon a trial on the merits. Our attention is specifically drawn to Fenderson's challenge to the charge of negligence. Where a genuine issue of material fact on the question of negligence has been raised by an opponent of a motion for summary judgment, the motion will be denied. *United States* v. *Rockwell International Corp.,* 628 F.Supp. 206 (C.I.T. 1986).

Although some of Government's arguments may be valid on the merits, it is not for this Court to pick and choose the merits on a general motion for summary judgment:

> "Fact finding and not fact determination is the fundamental issue confronting the court on summary judgment motions. Thus, the court cannot try issues of fact on a summary judgment motion, it can only determine whether there are factual issues to be tried. * * * If a party opposing summary judgment raises any triable fact questions, he has the right to adduce the expert testimony of live witnesses and cross-examine his opponent's witnesses rather than have to rely on the affidavits submitted in opposition to the summary judgment motion.

*Yamaha,* 3 C.I.T. at 109.

Fenderson cross-moves for summary judgment on this case focusing on a different area of the facts. Government opposes this motion. This Court is under no duty to grant a motion for summary judgment merely because both parties contend there are no factual issues to be tried. *Shell Oil Co.* v. *United States,* 84 Cust. Ct. 255,

C.R.D. 80–4 (1980). *See also Carter Footwear* v. *United States*, 10 CIT 618, Slip Op. 86–95 (Sept. 19, 1986). The parties disagree upon which facts are in dispute. This Court, upon examination of the documents and statements submitted, also finds in this instance, as well as in other areas in this case, there are genuine issues of fact in dispute.

It has been held:

> Though speedy and inexpensive, summary judgment is nonetheless a 'lethal weapon' capable of 'overkill'.* * * It denies the non-movant its 'day', i.e. a trial, in court. Moreover, experience has shown that a trial often establishes facts and inferences not gleanable from papers submitted [sic] pre-trial. Further, a reversal of summary judgment on appeal is not dispositive, but merely remits the case for trial. If reversal be error, that error will manifest itself at [sic] close of the non-movant's case, when the * * * court may direct a verdict or enter judgment accordingly.

*SRI International*, 775 F.2d at 1116–1117.

With these precautions in mind, this Court has decided to deny both parties' motions for summary judgment.

So ORDERED.