E. C. LINEIRO v. UNITED STATES (No. 4608)[1]

---

[1] C. A. D. 411.

United States Court of Customs and Patent Appeals, June 28, 1949

*Lawrence, Tuttle & Harper* (*Charles J. Evans* and *George R. Tuttle* of counsel) for appellant.

*David N. Edelstein*, Assistant Attorney General (*Richard F. Weeks*, special attorney, of counsel), for the United States.

[Oral argument May 11, 1949, by Mr. Tuttle and Mr. Weeks]

Before GARRETT, Chief Judge, and JACKSON, O'CONNELL, and JOHNSON, Associate Judges.

O'CONNELL, Judge, delivered the opinion of the court:

This is an appeal from the judgment of the United States Customs Court, Third Division, pursuant to its decision, C. D. 1125.

The involved merchandise was imported from Mexico at the port of Nogales and described by the appraiser as a "By Product Feed composed of 3 Rice by products obtained simultaneously in continuous milling of rice.

The collector classified the feed according to its component parts. The rice bran content, 68 to 80 per centum, was assessed for duty by him at five-eighths of 1 cent per pound under paragraph 727 of the Tariff Act of 1930; the rice hulls content, 5 to 19 per centum, at 5 cents per 100 pounds under paragraph 730, as amended by the trade agreement with Canada, T. D. 49752; and the broken rice content, 13 to 16 per centum, at five-sixteenths of 1 cent per pound under paragraph 727, as amended by the trade agreement with the Netherlands, T. D. 48075.

The importer protested the collector's classification claiming, among other things, that the merchandise was properly dutiable at 5 per centum ad valorem under paragraph 730 and the said trade agreement with Canada.

.. The respective paragraphs and amendments in question read:

PAR. 727. Paddy or rough rice, 1¼ cents per pound; brown rice (hulls removed, all or in part), 1¼ cents per pound; milled rice (bran removed, all or in part), 2½ cents per pound; broken rice, which will pass readily through a metal sieve perforated with round holes five and one-half sixty-fourths of one inch in diameter, and rice meal, flour, polish, and bran, five-eighths of 1 cent per pound.

· PAR. 730. Bran, shorts, by-product feeds obtained in milling wheat or other cereals, 10 per centum ad valorem; hulls of oats, barley, buckwheat, or other grains, ground or unground, 10 cents per one hundred pounds; dried beet pulp, malt sprouts, and brewers' grains, $5 per ton; soy bean oil cake and soy bean oil-cake meal, three-tenths of 1 cent per pound; all other vegetable oil cake and oil-cake meal, not specially provided for, three-tenths of 1 cent per pound; mixed feeds, consisting of an admixture of grains or grain products with oil cake, oil-cake meal, molasses, or other feedstuffs, 10 per centum ad valorem.

· PAR. 727 (as amended by the trade agreement with the Netherlands, T. D. 48075). Broken rice, which will pass readily through a metal sieve perforated with round holes five and one-half sixty-fourths of one inch in diameter_____ ⁵⁄₁₀ per lb.

: PAR. 730 (as amended by the trade agreement with Canada, T. D. 49752). Bran, shorts, byproduct feeds obtained in milling wheat or other cereals_____ 5% ad val.

At the trial the importer called as his sole witness Albert Lent, manager of the Arizona Flour Mills, in Tucson, and also in charge of formulas and research work for the Arizona Flour Mills of Arizona, whose testimony established that the importation here in issue was an offal produced in the milling of rice; that he had bought, imported and used a mixture consisting of rice bran, rice hulls, and broken rice; that the mixture was "used just as a bran, or as a by-product feed, and we would have no reason to determine the different ingredients" of the mixture; that the unsegregated mixture in his experience had been used as follows:

* * * We use it, around 10 per cent, in dairy rations, in poultry rations, in which it is mixed with ground grains, alfalfa meal, wheat bran, oil cake meals, and minerals and vitamin substances.

The Government offered in evidence the chemist's reports which had been attached to each of the three entries here in issue. Those reports show that the three component parts of the imported merchandise consisted of the following unsegregated proportions incidentally obtained in the milling operation:

| Protests | 104735K | 104736K | | 104737K |
|---|---|---|---|---|
| Car numbers | · 21902 | 465016–54041 | | 176566–28117 |
| Rice bran | 50% | 68% | 72% | 80% |
| Rice hulls | 15% | 19% | 12% | 5% |
| Rice (broken) | 15% | 13% | 16% | 15% |

The trial court, citing the case of *United States* v. *F. W. Myers & Co., Inc.*, 29 C. C. P. A. (Customs) 34, C. A. D. 168, overruled the importer's protests and in so doing stated in part:

In the instant case the three component parts of the merchandise are provided for *eo nomine* in paragraphs 727 and 730 of the Tariff Act of 1930. While such ingredients were apparently obtained simultaneously in a continuous milling operation rather than by a mixture of materials produced in separate operations as in the *Myers* case, *supra*, we are of opinion that the controlling factor is that the components are *eo nomine* provided for in the tariff act. As the testimony shows, each of the parts is in itself a byproduct feed obtained in the milling of rice, but, since each is specifically provided for in the tariff act, each is dutiable under such provision rather than under the general designation for byproduct feeds. As indicated in the *Myers* case, the provision for by-product feeds in paragraph 730 did not change the legislative policy of classifying rice bran, rice hulls, and broken rice as separate tariff entities. There is no evidence that the merchandise herein is anything other than a physical mixture of those three entities.

There is no question here that rice is a cereal or that the merchandise was obtained in milling cereal. The primary question is whether the combined mixture was dutiable as a single tariff entity under the provision of the statute or whether the mixture, segregable according to its component parts, was properly dutiable as three separate tariff entities, namely, rice bran, rice hulls, and broken rice.

Appellant contends the feed was properly dutiable as a single entity, and that the term "by-product feeds" employed in paragraph 730 is a designation by use which prevails over any *eo nomine* provisions of the tariff act relative to the component parts of the mixture.

Upon the record the involved feed in its imported condition obviously falls within the precise statutory definition laid down in paragraph 730 for "by-product feeds obtained in milling * * * cereals." The merchandise likewise falls within the spirit and intent of the provision. *C. J. Tower & Sons* v. *United States*, 25 C. C. P. A. (Customs) 408, 412, T. D. 49486. This court in that case directed attention to the fact that in the enactment of the involved legislation, and in accordance with its established policy for a great number of years, the Congress had evinced an intention of providing a low rate of duty upon stock and poultry feeds.

That the involved feed was composed of different component parts, each of which was *eo nomine* designated in other paragraphs of the tariff act, is not a controlling factor and does not necessarily mean that the merchandise may not be classified as a whole. In the *C. J. Tower & Sons* case, for example, this court held that a stock feed manufactured from "feeding oats" and composed of a number of ingredients, including oat grits specified *eo nomine* in paragraph 726 of the Tariff Act of 1930, and hulls of oats specified *eo nomine* in paragraph 730, was dutiable as an entity, namely, a manufactured article. See also *J. A. Forrest* v. *United States*, T. D. 47712; *Pena & Flores Importing Co.* v. *United States*, T. D. 49052.

The Government agrees that a by-product feed is a separate tariff entity, but contends that this does not harmonize with a designation by use because "In paragraph 730 Congress did not say products of the milling of wheat or other cereals' used as feed." A designation by use may be established, although the word "use" or "used" does not appear in the language of the statute. *United States v. Hillier's Son Co.*, 14 Ct. Cust. Appls. 216, 222, T. D. 41706; *United States v. Snow's United States Sample Express Co.*, 8 Ct. Cust. Appls. 351, T. D. 37611; *United States v. Dunhill*, 13 Ct. Cust. Appls. 310, T. D. 41231. Moreover, at the time of the enactment of paragraph 730 the Congress was informed and proceeded upon the basis that the by-product feeds therein designated were used chiefly as feed for animals. Summary of Tariff Information, 1921, page 704; Ib. 1929, page 705; *United States v. F. W. Myers & Co., Inc., supra; C. J. Tower & Sons v. United States, supra.*

The Government's contention that since the involved feed was used as an ingredient, the importer thereof was not entitled to the benefit of the lower rate of duty provided for by the statute, has no application to the factual situation presented by the record in the instant case. See *Southwestern Sugar & Molasses Co. v. United States*, 18 Cust. Ct. 128, C. D. 1056. See also *United States v. Hillier's Son Co., supra.* Moreover, as indicated in the decision of the court below, the imported product was used not only as an ingredient but also as an entity, namely, "just as a bran or as a byproduct feed."

The language employed in the enactment of paragraph 730 was "by-product feeds obtained in milling wheat or other cereals," and the merchandise here in issue answers to that particular and specific description. Therefore, upon the record and the authorities hereinbefore cited, it is manifest that while the Congress did not in the enactment of paragraph 730 employ the term "by-products used as feeds," the term "by-product feeds" therein contained expresses the same intent.

The factual situation presented in the *F. W. Myers & Co., Inc.*, case, *supra*, admittedly, was not the same as that presented by the record in the instant case. The controlling factor in the *F. W. Myers & Co., Inc.*, case, *supra*, as the court there expressly indicated, was that the involved merchandise was not covered by the provision of the statute, since it was "not a 'by-product' feed *obtained in milling* oats." Obviously, the doctrine of the *F. W. Myers & Co., Inc.*, case, *supra*, does not control the disposition of the question here in issue.

For the reasons stated, the decision of the United States Customs Court is *reversed.*

By reason of illness, HATFIELD, Judge, was not present at the argument of this case and did not participate in the decision.