(C.D. 4796)

ADMIRAL CRAFT EQUIPMENT CORP. *v.* UNITED STATES

Court No. 77–12–04909

(Dated April 12, 1979)

*Shaw and Stedina* (*Charles P. Deem* of counsel) for the plaintiff.
*Barbara Allen Babcock*, Assistant Attorney General (*Glenn E. Harris*, trial attorney), for the defendant.

OPINION AND ORDER

WATSON, Judge: This matter is before the court on cross-motions for summary judgment, and properly so, due to the absence of any issues of material fact.

The merchandise in dispute consists of plastic disposable aprons and bibs imported from Korea. The aprons are of the type which cover most of the wearer's front and are donned by inserting the head through a hole in the upper part and tying a central band around the waist. The

bibs are invoiced as lobster bibs. They are designed to be tied around the neck and are emblazoned with the picture of a red lobster "dormant."

This merchandise was classified as plastic wearing apparel under item 772.30 of the Tariff Schedules of the United States [1] (TSUS) and assessed with duty at the rate of 12.5 per centum ad valorem. Plaintiff claims that the merchandise is properly classifiable as other plastic articles not specially provided for under item 774.60, TSUS [2] and is consequently free of duty.

Plaintiff, having the burden of first overcoming the presumption that these articles are wearing apparel, argues that the term "wearing apparel" does not cover articles worn by humans essentially for protective purposes. As a general proposition this is obviously incorrect. An important, if not primary, purpose of wearing apparel is protection against the environment. No justification exists for distinguishing between articles worn for protection against the elements and those worn for protection against more localized conditions prevailing in the environment of the home, workplace, school, or restaurant. It is clear that textile articles similar to these importations have long been viewed as wearing apparel. *Henry E. Frankenburg et al.* v. *United States*, T.D. 12961—G.A. 1512 (1892); *Lamb & Griesbach* v. *United States*, T.D. 12110—G.A. 972 (1891); *G. & J. Ballin* v. *United States*, T.D. 11085—G.A. 528 (1891). See also, *Campbell, Metzger & Jacobson* v. *United States*, T.D. 34243—G.A. 7537 (1914). *Cf. Darlington, Runk & Co.* v. *United States*, 136 F. 716 (T.D. 26197)(C.C.E.D. Pa. 1905); *In re Spielman et al.*, 66 F. 724 (C.C.S.D.N.Y. 1894).

Contrary to plaintiff's assertion, its claim is not supported by the reasoning in *Antonio Pompeo* v. *United States*, 40 Cust. Ct. 362, C.D. 2006 (1958). In that case crash helmets used by motorcycle and auto racers were held not to be wearing apparel. However, the protective function of the helmets went far beyond that of general wearing apparel. The helmets were designed to protect the wearer against traumatic injury arising from unusual hazards. In fact, the court compared them to welders' face masks, divers' helmets and dress, policemen's bulletproof vests, and lead aprons worn by X-ray technicians. The importations involved herein clearly do not belong to the same category and therefore would not benefit from any interpretation of wearing apparel which excluded articles of a highly developed and specialized protective nature. For this reason also, the court does not

---

[1] Item 772.30 reads as follows:
   Wearing apparel (including rainwear) not specially provided for, of rubber or plastics.
[2] Item 774.60 and its related heading read as follows:
   Articles not specially provided for, of rubber or plastics:

   *       *       *       *       *       *       *

   Other

find it necessary to enter into a discussion of defendant's criticism of the result in the *Pompeo* case.

As for the disposable character of the importations, there is no basis in the statute for distinctions derived from the relative durability of plastic wearing apparel.

The court has found one decision which requires further discussion. In *W. J. Byrnes & Co. of N.Y., Inc., The Museum of Modern Art v. United States*, 38 Cust. Ct. 339, C.D. 1884 (1957), paper slippers were held to be properly classifiable as manufactures of paper [3] rather than as footwear.[4] The paper slippers were imported to be worn by visitors to a Japanese house erected on the premises of the Museum of Modern Art in New York City. Two reasons for this holding were given by the court: First, that the provision for footwear was intended to include only coverings designed to protect the foot and to be worn for an indefinite period of time; and second, that the upper parts of the imported slippers were not composed of material specifically named in the footwear provision or substitutes therefor.

To the extent that the opinion in *W. J. Byrnes & Co.* considered the durability of an article as relevant to its classification it gave unwarranted importance to that characteristic. However, a number of special considerations were involved in that case which distinguish it from this one. The slippers were used to protect the floors of the Japanese house and not the wearers. More importantly, the material of which the slippers were composed was not named in the statute. Here, we have a special provision for wearing apparel composed of plastic. To exclude the imported aprons and bibs would therefore require the drawing of an even finer and more artificial distinction than was drawn in the *Byrnes* case. It would require the thankless task of determining the relative durability and disposability of articles made of the same basic material and belonging to the same general class—all this without any legislative indication that the distinction is germane.

A provision for wearing apparel is a classification by use. *Cf. United States v. Hillier's Son Co.*, 14 Ct. Cust. Appls. 216, T.D. 41706 (1926). Accordingly the test of whether an article falls within the classification is whether it belongs to the class of articles used as wearing apparel. See *Bangor & Aroostook Railroad Co. et al. v. United States*, 20 CCPA 96, T.D. 45724 (1932).

The duration of an article's use is irrelevant to a determination of this nature. If the importation belongs to the class of articles used as wearing apparel it is classifiable as such.

---

[3] The relevant provision was par. 1413 of the Tariff Act of 1930, as modified by the Annecy Protocol of Terms of Accession to the General Agreement on Tariffs and Trade, T.D. 52373, supplemented by Presidential proclamation, T.D. 52462.

[4] Par. 1530(e) of the Tariff Act of 1930.

In light of the above conclusions, it is not necessary to reach defendant's additional argument that these articles are within the trade meaning of wearing apparel. The common meaning of the term adequately disposes of the matter. See generally, *Maillard et al.* v. *Lawrence*, 57 U.S. (16 How.) 251 (1853).

It is therefore ORDERED that plaintiff's motion for summary judgment be denied and defendant's cross-motion for summary judgment be granted.