**H.I.M./FATHOM, INC., Plaintiff,**

**v.**

**UNITED STATES, Defendant.**

**Slip. Op. 97–96.**
**Court No. 92–12–00808.**

United States Court of
International Trade.

July 14, 1997.

Sandler, Travis & Rosenberg, P.A., Miami, FL (Leonard L. Rosenberg and Paul G. Giguere), for plaintiff.

Frank W. Hunger, Assistant Attorney General; Joseph I. Liebman, Attorney–in–Charge, International Trade Field Office, Commercial Litigation Branch, Civil Division, United States Department of Justice (Bruce N. Stratvert); of counsel: Mark G. Nackman, Office of Assistant Chief Counsel, International Trade Litigation, United States Customs Service, Washington, DC, for defendant.

## *OPINION*

TSOUCALAS, Senior Judge.

Plaintiff, H.I.M./Fathom ("Fathom"), challenges the United States Customs Service's ("Customs") classification of its import mer-

chandise, including wetsuits, wetsuit shoes, wetsuit headgear, wetsuit gloves and weight belts as "garments"[1] under headings 6113 and 6114, 6404.19.80, 6505.90.60, 6116.10.25 and 6217.10.00, respectively, of the Harmonized Tariff Schedule of the United States ("HTSUS") (1990). Plaintiff contends its imports are properly classified as "other watersport equipment" under HTSUS Chapter 95. The Court has jurisdiction over this matter under 28 U.S.C. § 1581(a) (1994).

## Background

The main products at issue are closed-cell neoprene rubber wetsuits, consisting of a neoprene and textile laminate manufactured in St. Lucia, West Indies. The laminate is made of chemically blown closed-cell neoprene rubber compressed between layers of textile. The wetsuits at issue are made of two kinds of material: (1) "Seaflex," a neoprene rubber layer laminated with a knit fabric on both the interior and exterior surfaces; and (2) "Durasoft," a neoprene rubber layer laminated with a plush or pile material on the interior surface. The material comes in thicknesses of 1/8", 3/16" or 1/4", depending on the type of water in which the suit is intended to be used. Stitching and neoprene rubber cement are used to assemble the suits. The shoes, headgear and gloves consist of basically the same material as the wetsuits.

The wetsuit material insulates the body through the layer of water that enters the space between the suit and the wearer while diving. When the wearer's body and the layer of water caught between the interior surface of the suit and the wearer's skin reach an equilibrium temperature, heat loss is reduced. *Customs Ruling 088542*, Pl.'s App., Ex. A, at 1 (May 1, 1992).

Customs classified the merchandise at issue as garments in the following manner: (1) the Seaflex wetsuits under HTSUS heading 6113, with a duty of 7.60 percent *ad valorem*; (2) the Durasoft wetsuits under HTSUS heading 6114, with a duty of 16.10 percent *ad valorem*; (3) the wetsuit shoes under HTSUS 6404.19.80, with a duty of 20 percent *ad valorem*; (4) the wetsuit headgear under HTSUS 6505.90.60, with a duty of 14.10 percent *ad valorem*; (5) the wetsuit gloves under HTSUS 6116.10.25, with a duty of 19.80 percent *ad valorem*; and (6) the weight belts under HTSUS 6217.10.00, with a duty of 15.50 percent *ad valorem*. Upon review of Fathom's protest, which alleged the merchandise is properly classified under Chapter 95, Customs denied the protest in full. *See id.*

In its denial, Customs discussed the scope of HTSUS heading 9506, articles and equipment for sports, and determined that the Explanatory Notes demonstrate the limitation of Chapter 95 to "apparatus and appliances." *Id.* at 4. Given this limitation, and the specific exclusion of "[s]ports clothing" by Chapter Note 1(e) to Chapter 95, Customs stated that all sports clothing, including protective garments, are excluded from the chapter. *Id.* Customs also noted that, as an *eo nomine* provision, Chapter 95 is clear in its scope and the wetsuits are not the type of article meant to be included in the chapter. *Id.* at 4–5.

Further, with regard to HTSUS Chapter 61, Customs determined that headings 6113 and 6114 include "divers' suits," as well as other similar merchandise, as articles classified as garments. *Id.* at 6. Customs noted that protective sports clothing not worn for "decency, comfort or adornment," which distinguished wearing apparel under the Tariff Schedule of the United States ("TSUS"), can nevertheless be classified as garments under the HTSUS. *Id.* Finally, Customs explained that the "use" test is not applicable in this case. *Id.*

Fathom now appeals Customs' denial of its protest, challenging Customs' classification of its imported merchandise and claiming its wetsuits and related merchandise are properly classified under HTSUS 9506.29.00:

| 9506 | Articles and equipment for ... gymnastics, athletics, other sports (including table-tennis) or outdoor games, not specified or included elsewhere in this chapter; swimming pools and wading pools; parts and accessories thereof: |
|---|---|

provisions.

---

[1] For simplification, this opinion will refer to HTSUS Chapters 61, 62, 64 and 65 as "garment"

* * *

water skis, surf boards, sailboards and other water-sport equipment; parts and accessories thereof:

* * *

9506.29.00   Other .........................4.64%

Under Fathom's proposed classification, the merchandise at issue would be dutiable at 4.64 percent *ad valorem* or free of duty under the provisions of the Caribbean Basin Economic Recovery Act. Fathom moves this Court for summary judgment and defendant cross-moves for summary judgment.

## Discussion

■ On a motion for summary judgment, the Court must consider whether a case presents any issues of genuine material fact. *Anderson v. Liberty Lobby, Inc.,* 477 U.S. 242, 247–48, 106 S.Ct. 2505, 2509–10, 91 L.Ed.2d 202 (1986). If there are no such issues, summary judgment is appropriate when the movant is entitled to judgment as a matter of law. *See Mingus Constructors, Inc. v. United States,* 812 F.2d 1387, 1390 (Fed.Cir.1987). The meaning of a tariff term is a question of law to be decided by the Court, whereas the determination of whether a particular article fits within that meaning is a question of fact. *Hasbro Indus., Inc. v. United States,* 879 F.2d 838, 840 (Fed.Cir. 1989). In this case, because the Court finds there are no genuine issues of material fact to be decided and the dispositive issues to be resolved are legal, summary judgment is appropriate.

■ Pursuant to 28 U.S.C. § 2640(a) (1994), Customs' classification decision is subject to *de novo* review. The Court must determine "whether the government's classification is correct, both independently and in comparison with the importer's alternative." *Jarvis Clark Co. v. United States,* 733 F.2d 873, 878 (Fed.Cir.1984). In cases such as this, where there is no factual dispute between the parties, Customs' presumption of correctness is irrelevant. *Goodman Mfg., L.P. v. United States,* 69 F.3d 505, 508 (Fed. Cir.1995); *see also Rollerblade, Inc. v. United States,* 112 F.3d 481, 484 (Fed.Cir.1997) (stating that, where there are no disputed issues of material fact, "no deference attaches to Customs' classification decisions ei-

ther under 28 U.S.C. § 2639 or under [the] *Chevron* [doctrine]").

■ The definition and scope of terms in a provision of the HTSUS is to be determined by the wording of the statute. *Lynteq, Inc. v. United States,* 976 F.2d 693, 696 (Fed.Cir.1992); Gen. R. Interp. 1, HTSUS. However, if a tariff term is not clearly defined by the HTSUS, and if legislative history is not determinative of its meaning, its correct meaning is resolved by ascertaining its common and commercial meaning. *Mita Copystar Am. v. United States,* 21 F.3d 1079, 1082 (Fed.Cir.1994); *see also Amity Leather Co. v. United States,* 20 CIT ——, ——, 939 F.Supp. 891, 894 (1996). To determine the common meaning of a tariff term, the Court may utilize standard dictionaries and scientific authorities, as well as its own understanding of the term. *Lynteq,* 976 F.2d at 697.

■ In its determination of the definition of tariff terms, the Court may also utilize the Explanatory Notes. Explanatory Notes which are published by the World Customs Organization (formerly known as the Customs Co-operation Council), provide guidance in interpreting the language of the HTSUS. *See Bausch & Lomb, Inc. v. United States,* 21 CIT ——, ——, 957 F.Supp. 281, 288 (1997) (stating tariff acts must be interpreted in accordance with Congressional intent and Congress's endorsement of the Explanatory Notes demonstrates intent of Congress). Although not legally binding on the United States, the Explanatory Notes generally indicate the "proper interpretation" of provisions within the HTSUS. *Lynteq,* 976 F.2d at 699 (citing H.R. Conf. Rep. No. 100–576, 100th Cong., 2d Sess. 549 (1988), *reprinted in* 1988 U.S.C.C.A.N. 1547, 1582); *see also Marubeni Am. Corp. v. United States,* 35 F.3d 530, 535 n. 3 (Fed.Cir.1994) (stating Explanatory Notes, while not dispositive or binding, are instructive). Additionally, in determining whether an item is properly classified under a particular heading in the HTSUS, the Explanatory Notes are persuasive authority for the Court when they specifically include or exclude an item from a tariff heading. *See, e.g., Bausch & Lomb,* 21 CIT at ——, 957 F.Supp. at 288.

Fathom contends its wetsuits are not properly classified as garments because they are not personal attire. In particular, Fathom notes that the HTSUS garment headings at issue here, 6113 and 6114, fall under the category of "wearing apparel," which has been defined as articles worn for reasons of "decency, comfort and adornment." Pl.'s Mem. Supp. Mot. Summ. J. at 12–13 (citing *Antonio Pompeo v. United States*, 40 Cust. Ct. 362, 365, C.D. 2006 (1958)). In addition to this definition, Fathom asserts that the wearing apparel category has been interpreted to exclude articles worn in a sport or occupation to protect against hazards of a game, sport or occupation. *Id.*

Fathom proposes that its import wetsuits are properly categorized under HTSUS 9506.29.00 because, simply, they constitute sports equipment used in scuba diving, a water-sport activity. *Id.* at 18. Fathom cites case law asserting that an item is classified as sports equipment based on the special design of the article as related to a particular sport for which it is intended. *Id.* (citing *Sports Indus., Inc. v. United States*, 65 Cust. Ct. 470, 473–74, C.D. 4125 (1970)). Since there is no doubt as to the design of wetsuits for use in the water-sport of scuba diving, Fathom contends its imports fall under Chapter 95. *Id.*

Accordingly, Fathom makes the same argument for the classification of the shoes, headgear and gloves because they are made of the same material as the wetsuits and are used for the same purpose. *Id.* at 21. Fathom further contends that the weight belts should be classified under HTSUS subheading 9506.29.00 because they are similar to divers' weight belts, which have been classified by Customs under that subheading in three previous rulings. *Id.*

Fathom rebuts the Customs Ruling's assertion that use analysis is not applicable, contending it is well-established that the ultimate test of whether an article is to be considered wearing apparel depends on its use. *Id.* at 13 (citing *Admiral Craft Equip. Corp. v. United States*, 82 Cust.Ct. 162, 164, C.D. 4796 (1979)). Fathom states that, although an article resembles the wearing apparel characteristics, its use may be beyond the scope of the wearing apparel category under the *Carborundum* criteria,[2] particularly where the article serves a protective function against serious injury. *Id.* at 14 (citing *Dynamics Classics, Ltd. v. United States*, 10 CIT 666, 669–70 (1986) (holding plastic exercise suits not classified as wearing apparel because chiefly used for weight reduction and not suitable for wear during exercise or work)). In applying the *Carborundum* criteria to its wetsuits, Fathom concludes that, because the use and physical characteristics of wetsuits are to protect the wearer from hypothermia and other hazards in the sport of scuba diving, the wetsuits are "far beyond the common and judicial understanding of wearing apparel," which encompasses articles worn for decency, comfort and adornment. *Id.* at 17.

Fathom also contends that Customs' use of the Explanatory Notes to preclude the wetsuits from classification under Chapter 95 and to include them under Chapter 61 is erroneous. Fathom states that since the case law regarding wearing apparel is determinative, the Explanatory Notes are secondary. *Id.* at 15. Moreover, Fathom notes that Customs' categorization of the wetsuits by their similarity to articles listed in the Explanatory Notes to Chapter 61, and their exclusion based on their dissimilarity to the articles listed in the Explanatory Notes to Chapter 95, is a tenuous argument contrary to case law. *Id.* at 14–15.

Customs maintains its classification is correct because the language of the HTSUS in the chapter heading and notes of Chapter 61 clearly includes the merchandise and because the wording of Chapter 95 specifically excludes the merchandise. Def.'s Mem. in Supp. Mot. Summ. J. at 11–13. Customs further contends that, in accordance with Rule 1 of the HTSUS General Rules of Interpretation ("GRI"), only merchandise deemed "articles and equipment" for "athletics" or for "other sports" or "parts and accessories

2. The *Carborundum* criteria for chief use, first enunciated in *United States v. Carborundum Co.*, 63 C.C.P.A. 98, 536 F.2d 373, 377 (1976), are:

(1) general physical characteristics; (2) expectations of the purchaser; (3) channels of trade; and (4) advertising and use of merchandise.

thereof" can be classified under heading 9506. *Id.* at 11.

In addition, Customs claims that the shoes, headgear and gloves were classified appropriately under the garment headings of the HTSUS because the items serve the same function as the wetsuits: "comfort and protection" in the sport of scuba diving. *See id.* at 11–14. Customs also notes that the language of the HTSUS requires classification of the shoes, headgear and gloves under the garment provisions because they are excluded by Chapter Notes 1(g), 1(q) and 1(u) to Chapter 95. *Id.* at 12–14. Customs concedes that the import weight belts are properly classified under HTSUS 9506.29.00 *Id.* at 6. Finally, Customs distinguishes the TSUS case law to which Fathom cites and bolsters its position with language from the Explanatory Notes to Chapters 61 and 95. *See id.* at 15–17, 18.

The language of a statute is determinative unless legislative intent is clearly in contrast. *See Consumer Prod. Safety Comm'n v. GTE Sylvania, Inc.,* 447 U.S. 102, 108, 100 S.Ct. 2051, 2056, 64 L.Ed.2d 766 (1980); *Amity Leather,* 20 CIT at ——, 939 F.Supp. at 895 (citing *Lynteq,* 976 F.2d at 696). Under GRI 1, the classification of an article is "determined according to the terms of the headings and any relative section or chapter notes." Customs' classification is correct because the terms of the headings and sections in Chapter 61 clearly bring the wetsuits within the ambit of the chapter.

■ The plain meaning of the tariff language to Chapter 61 explicitly includes articles composed of the wetsuit material. The tariff language to Chapter 61 states, in relevant part:

| | | |
|---|---|---|
| 6113.00.00 | Garments, made up of knitted or crocheted fabrics of heading 5903, 5906 or 5907 . . . . . . . . . . . . . . . | 7.6% |
| | * * * | |
| 6114 | Other garments, knitted or crocheted: | |
| | * * * | |
| 6114.30 | Of man-made fibers: | |
| 6114.30.30 | Other . . . . . . . . . . . . . . . . . . . . . . . . | 16.1% |

A garment is defined as "an article of outer clothing (as a coat or dress) usu. exclusive of accessories." **Webster's Third New International Dictionary** 936 (1993). Clothing is defined as "covering for the human

body or garments in general: all the garments and accessories worn by a person at any one time." *Id.* at 428. The wetsuits are undeniably articles worn as an outer covering for the human body at a particular time, *i.e.,* while scuba diving. Although wetsuits are not specifically mentioned in the HTSUS garment provisions, heading 6113 specifically includes garments made of knitted or crocheted fabrics provided for in headings 5903, 5906 or 5907. Headings 5903, 5906 and 5907 encompass the wetsuit material of closed-cell foamed neoprene. Heading 5903, for example, includes "[t]extile fabrics impregnated, coated, covered or laminated with plastics." Further, heading 5906 encompasses "[r]ubberized textile fabrics, other than those of heading 5902." Similarly, heading 6114 refers to "[o]ther garments, knitted or crocheted."

Further, the section notes to Section XI (Textiles and Textile Articles), which encompass Chapters 50–63, indicate that the wetsuits are not excluded from the chapter. Section Note 1(t) explicitly states that the section does not cover "[a]rticles of chapter 95 (for example, toys, games, sports requisites and nets)." Hence, while sports equipment and appliances, such as toys and nets, are to be classified under Chapter 95, and not under Chapter 61, there is no mention of such classification for wetsuits or other similar items worn on the body.

The Explanatory Notes to heading 6113 also support Customs' argument that the garment chapters cover wetsuits. The Explanatory Notes state that heading 6113 "covers all garments made up of knitted or crocheted fabrics of heading 59.03, 59.06 or 59.07 . . . includ[ing] raincoats, oilskins, *divers' suits* and anti-radiation protective suits, not combined with breathing apparatus." *Explanatory Notes* at 842 (1st ed. 1986) (emphasis added).

The mention of divers' suits in the Explanatory Notes to heading 6113 contradicts plaintiff's contention that there is no reference to "wetsuits" in the Explanatory Notes. Indeed, Fathom accepts the role of wetsuits as "specially designed for and . . . used in . . . scuba diving." Pl.'s Mem. Supp. Mot. Summ. J. at 2. To defeat the relevance of the

Explanatory Notes' inclusion of divers' suits to this case, plaintiff would have to contend that its wetsuits used in scuba diving are different from divers' suits. However, the material facts presented by plaintiff, as well as the affidavits it provides, demonstrate that for all intents and purposes the wetsuit a diver wears may be termed a diver's suit. *See id.,* Exs. C, D.

Ivan L. Perla, former president of plaintiff Fathom, specifically stated that Fathom was involved in selling and manufacturing "wet suits and other diving related equipment." *Id.,* Ex. D, at 1. Durwood J. Morin, a certified diving instructor and co-owner of an institution that teaches diving, also described the wetsuits as suits worn to protect the diver from numerous hazards. *Id.,* Ex. C, at 1. Finally, the U.S. Department of Commerce "NOAA Diving Manual" specifically describes the protective clothing worn by divers as "wet suits." Def.'s Reply Mem. Supp. Mot. Summ. J. at Ex. A., at 5–15 to 5–16.[3]

■■■ Because the shoes, headgear and gloves have composition similar to the wetsuits, the Court concludes that they are also properly classified as garments under subsections 6404.19.80, 6505.90.60 and 6116.10.25, respectively.[4] However, the Court agrees with Fathom that the weight belts should be classified under HTSUS 9506.29.00. The weight belts at issue are in all material respects identical to divers' weight belts, which have been classified by Customs under that subheading in previous rulings. *See Customs Ruling 813857,* Pl.'s App., Ex. I (Aug. 23, 1995); *Customs Ruling 895417,* Pl.'s App., Ex. H (Mar. 10, 1994);

*Customs Ruling 885464,* Pl.'s App., Ex. G (May 21, 1993).

The Court finds that Fathom's wetsuits and related articles cannot properly be classified under plaintiff's proposed classification, Chapter 95. First, Chapter Note 1(e) to Chapter 95 explicitly excludes "[s]ports clothing" from the chapter, while Chapter Notes 1(g) and (u) explicitly exclude sports footwear, headgear and gloves from the chapter. Chapter Note 1(u), in particular, states that the chapter does not cover "[r]acket strings, tents or other camping goods, or *gloves (classified according to their constituent material )*" (emphasis added).

■■■ Moreover, Fathom's recourse to case law decided under the TSUS regarding wearing apparel and the use test is unnecessary and incorrect. If, as here, the statutory language within the HTSUS is clear, it is unnecessary to apply TSUS terminology.[5] *Amity Leather,* 20 CIT at ——, 939 F.Supp. at 895.

In addition, Explanatory Note 95.06(B)(13) to Chapter 95 indicates that the chapter covers "[p]rotective equipment for sports or games, [including] fencing masks and breast plates, elbow and knee pads, cricket pads, [and] shin-guards." *Explanatory Notes* at 1592. Therefore, while equipment such as padding and guards are included in the chapter, there is no mention of wetsuits or any similar article of attire. Other Chapter 95 Explanatory Notes explicitly include only water-sport equipment such as "[w]aterskis, surf-boards, sailboards and other ... equipment, such as diving stages (platforms), chutes, divers' flippers and respiratory

3. Also, despite the fact that a use analysis is not necessary, contrary to Fathom's assertion, the garment provisions of the HTSUS include certain items the principal use of which is not comfort and adornment. For example, "[n]onwoven disposable apparel designed for use in ... contaminated areas," obviously not worn for pure decency, comfort or adornment but for protection, are classified under HTSUS 6210.10.40.

4. In fact, the Explanatory Notes to Chapter 64 explicitly state that, with certain listed exceptions, the chapter covers "various types of footwear (including overshoes) irrespective of their shape and size, the particular use for which they

are designed, their method of manufacture or the materials of which they are made." *Explanatory Notes* at 873. Similarly, the Explanatory Notes to Chapter 65 state that the chapter covers "headgear of all kinds, irrespective of the materials of which they are made and of their intended use (daily wear, theater, disguise, protection, etc.)." *Id.* at 881.

5. The Court notes that the *Sports Industries* case, heavily relied upon by Fathom as precedent regarding the use test for wearing apparel, involved sections for the classification of gloves in the TSUS that differ radically from those in the HTSUS.

masks of a kind used without oxygen...."
*Id.*

Finally, the language of the HTSUS, in contrast to the TSUS, evidences statutory intent that articles are not classified within the garment provisions primarily based on use. While classification by use under certain sections of the HTSUS can be implied from the language of the headings, *see E.M. Chemicals v. United States,* 20 CIT ——, ——, 923 F.Supp. 202, 207 (1996) (citing *E.C. Lineiro v. United States,* 37 C.C.P.A. 10, 14, C.A.D. 411, 1949 WL 4894 (1949) (stating that classification by use may be appropriate for a particular HTSUS provision even where the words "use" or "used" are not stated in the language of such provision)), the garment provisions involved, Chapters 61 and 62, are not use provisions. In particular, these chapters do not expressly state that classification of articles under its provisions depends upon principal use, and the terms of the headings do not imply that the garment chapters are use provisions. Rather, heading 6113 refers to garments made of materials listed in HTSUS 5903, 5906 and 5907 and heading 6114 simply refers to knitted or crocheted articles.

### Conclusion

Consequently, the Court concludes that Customs properly classified the Fathom wetsuits, shoes, headgear and gloves under HTSUS headings 6113 and 6114, 6404.19.80, 6505.90.60 and 6116.10.25, respectively. The weight belts are properly classified under HTSUS 9506.29.00.

### JUDGMENT

This case, having been duly submitted for decision, and the Court, after due deliberation, having rendered a decision herein; now, in accordance with said decision, it is hereby

**ORDERED** that the United States Customs Service's ("Customs") classification of H.I.M./Fathom's ("Fathom") wetsuits, shoes, headgear and gloves under headings 6113 and 6114, 6404.19.80, 6505.90.60 and 6116.10.25, respectively, as garments under the Harmonized Tariff Schedule of the United States ("HTSUS") is upheld; and it is further

**ORDERED** that Customs shall reliquidate Fathom's import weight belts under HTSUS 9506.29.00; and it is further

**ORDERED** that this case is dismissed.