**United States Court of International Trade**

GOVESAN AMERICA CORP.,

                Plaintiff,

       v.

UNITED STATES,

                Defendant.

BEFORE: Pogue, Judge

Consol. Court No. 97-10-01833

[Plaintiff's motion for summary judgment denied.  Defendant's cross-motion for summary judgment granted.  Judgment entered for Defendant.]

Decided: September 28, 2001

Ross & Hardies (Joseph S. Kaplan, Joshua P. Rubin); Caramagno & Griffin (William L. Griffin), Of Counsel, for Plaintiff.

Robert D. McCallum, Jr., Assistant Attorney General, Joseph I. Liebman, Attorney in Charge, International Trade Field Office, Mikki Graves Walser, Attorney, Commercial Litigation Branch, Civil Division, U.S. Department of Justice; Chi S. Choy, Office of Assistant Chief Counsel, International Trade Litigation, U.S. Customs Service, Of Counsel, for Defendant.

**OPINION**

**Pogue, Judge:** Plaintiff, Govesan America Corp. ("Govesan"), challenges a decision of the United States Customs Service ("Customs") denying Plaintiff's protests filed in accordance with section 514 of the Tariff Act of 1930, as amended, 19 U.S.C. § 1514 (1994).  At issue is the proper tariff classification under 19 U.S.C. § 1202, Harmonized Tariff Schedule of the United States ("HTSUS"), of Plaintiff's imports of powder paints from Spain.

Plaintiff claims that the subject merchandise is classifiable

under subheading 3210.00.00, HTSUS, as "[o]ther paints and varnishes (including enamels, lacquers and distempers); prepared water pigments of a kind used for finishing leather." Merchandise classifiable under heading 3210 is subject to a 1.8% ad valorem duty rate. Customs liquidated the merchandise under heading 3907, HTSUS, as "Polyacetals, other polyethers and epoxide resins, in primary forms; polycarbonates, alkyd resins, polyallyl esters and other polyesters, in primary forms." The imported powders exist in three basic forms: epoxy-based, polyester-based and epoxy-polyester hybrids. The powders consisting principally of epoxide resins were classified under subheading 3907.30.00, HTSUS, which covers, "Polyacetals, other polyethers and epoxide resins, in primary forms: Epoxide resins," dutiable at a rate of 6.1% ad valorem; the powders consisting principally of polyester were classified under subheading 3907.99.00 HTSUS, which covers, "polycarbonates, alkyd resins, polyallyl esters and other polyesters, in primary forms: Other," dutiable at a rate of 2.2¢/kg plus 8.2% ad valorem. Hybrid resins were classified under subheadings 3907.30.00 or 3907.99.00, depending upon which resin (that is, epoxy or polyester) predominated by weight.

This court has jurisdiction pursuant to 28 U.S.C. § 1581(a)(1994). Customs' classification is subject to de novo review pursuant to 28 U.S.C. § 2640. Before the Court are cross-motions for summary judgment made by Plaintiff and Defendant, the

United States, pursuant to USCIT Rule 56.

## Standard of Review

Under USCIT Rule 56, summary judgment is appropriate "if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." USCIT R. 56(c); see also Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 247 (1986); Celotex Corp. v. Catrett, 477 U.S. 317, 322 (1986).

The court analyzes a Customs classification issue in two steps: "first, [it] construe[s] the relevant classification headings; and second, [it] determine[s] under which of the properly construed tariff terms the merchandise at issue falls." Bausch & Lomb, Inc. v. United States, 148 F.3d 1363, 1365 (Fed. Cir. 1998) (citing Universal Elecs., Inc. v. United States, 112 F.3d 488, 491 (Fed. Cir. 1997)). Whether the subject merchandise is properly classified is ultimately a question of law.[1] See id. Summary

---

[1]Customs decided this case based on a standard classification ruling and did not utilize notice and comment procedures. Following the Supreme Court's holding in United States v. Mead Corp., 121 S. Ct. 2164 (2001), the Court does not afford the deference articulated in Chevron U.S.A. Inc. v. Natural Resources Defense Council, 467 U.S. 837, 843-45 (1984), to Customs' standard classification rulings. Cf. United States v. Haggar Apparel Co., 526 U.S. 380, 389 (1999). Accordingly the Court defers to Customs' classification ruling only to the extent it has the power to persuade. See Heartland By-Products, Inc. v. United States, slip op. 00-1287, 00-1289 (Fed. Cir. Aug. 30,

judgment of a classification issue is therefore appropriate "when there is no genuine dispute as to the underlying factual issue of exactly what the merchandise is."  Id.

The merchandise at issue is synthetic thermosetting[2] polymer-based[3] powder paint, or powder coating.[4] See Pl.'s Mem. Supp. Mot. Summ. J. at 4 ("Pl.'s Mem."); Esquivel Decl. at ¶11. The parties agree that the powder paints are made of epoxy resins, polyester resins, or a combination of epoxy and polyester ("hybrid") resins[5]

---

2001).  Moreover, although there is a statutory presumption of correctness that attaches to Customs' classification decisions, see 28 U.S.C. §2639 (a)(1), that presumption is not relevant where the Court is presented with a question of law in a proper motion for summary judgment.  See Universal Elecs., 112 F.3d at 492.

[2]Thermoset describes "any of a group of polymers that soften when initially heated, then harden and condense in bulk and retain a permanent shape; they cannot be softened or reprocessed by reheating."  Academic Press Dictionary of Science and Technology 2206(1992).

[3]A polymer is a "[s]ubstance made of giant molecules formed by the union of simple molecules . . . ."  McGraw-Hill Dictionary of Scientific and Technical Terms 1462 (4th ed. 1989).

[4]"Powder paints" and "powder coatings" are used interchangeably by both parties to describe the merchandise. See Pl.'s Mem. at 13; Bierwagen Aff. at ¶7; Rodriguez-Maceda Aff. at ¶19.

[5]Resins are "any natural or synthetic organic compound consisting of a noncrystalline or viscous liquid substance." The New Encylopedia Britannica Vol. 9, 1038 (15th ed. 1986). Generally, the term resin is used "to designate any polymer that is a basic material for plastic." IUPAC Congress/General Assembly, Definition of Terms Relating to Reactions of Polymers and to Functional Polymeric Materials, at 2.2 (July 2001), available at http://www.iupac.org.html; see also Van Nostrand's Scientific Encyclopedia 2240, 2428 (7th ed. 1989); McGraw-Hill, supra note 3, at 1604.  As a component of powder paints, resins

in primary forms, together with pigments, extenders, modifiers, and cross-linkers or curing agents. See Pl.'s Stmt. Undisputed Facts ("Pl.'s Stmt.") at ¶18; Def.'s Resp. Pl.'s Stmt. ("Def.'s Resp.") at ¶18.

The parties also agree that powder paints are produced in a three-part manufacturing process involving blending, melting (extrusion), and grinding together all of the aforementioned components. See Pl.'s Stmt. at ¶¶24-27; Def.'s Resp. at ¶¶24-27. Furthermore, the parties agree that powder paints are applied to the substrate[6] with an electrostatic spray nozzle/gun.[7] The powder particles are charged electrostatically at the tip of the spray nozzle/gun and cling to the substrate, which has the opposite charge. See Pl.'s Stmt. at ¶8; Def.'s Resp. at ¶8. Heat is required to "cure" the applied powder paint, resulting in a thermoset coating. See Pl.'s Stmt. at ¶34; Def.'s Resp. at ¶31; Esquivel Dec. at ¶11. The primary purpose of the powder paint is to form this protective coating. See Pl.'s Stmt. at ¶¶30-31; Def.'s Resp. at ¶¶30-31.

---

help with adhesion, disperse pigment, and "tend to promote good, integral, functional properties, such as impact resistance." Figlioti Dep. at 63.

[6]A substrate is the "[b]asic surface on which a material adheres, for example, paint or laminate." McGraw-Hill, supra note 3, at 1850.

[7]Defendant refers to the electrostatic charging device as a "spray gun"; Plaintiff refers to it as a "spray nozzle." See Pl.'s Stmt. at ¶30; Def.'s Resp. at ¶30.

Both parties agree on what constitutes the basic components of the paint and how it is used. Although the parties disagree as to whether the powder coating is "principally" made of plastic,[8] our analysis leads us to conclude that there is no genuine issue of material fact regarding the composition of the subject merchandise and summary judgment, in favor of the Defendant, is appropriate.

## Discussion

The HTSUS consists of (A) the General Notes; (B) the General Rules of Interpretation; (C) the Additional U.S. Rules of Interpretation; (D) sections I to XXII, inclusive (encompassing chapters 1 to 99, and including all section and chapter notes, article provisions, and tariff and other treatment accorded thereto); and (E) the Chemical Appendix.

The General Rules of Interpretation ("GRI") to the HTSUS govern the proper classification of all merchandise. See Carl Zeiss, Inc. v. United States, 195 F.3d 1375, 1379 (Fed. Cir. 1999). GRI 1 is the first rule for determining classification cases and states, "for legal purposes, classification shall be determined according to the terms of the headings and any relative section or

---

[8]Whether the subject merchandise consists principally of plastic is at issue because the Explanatory Note to Chapter 3210 specifically excludes "powder paints consisting principally of plastics," and refers to Chapter 39, which covers "Plastics and Articles thereof" as the proper chapter for classification of such merchandise. See discussion infra note 13 and pp. 15-17.

chapter notes . . . ."  GRI 1, HTSUS; <u>see also</u> <u>Orlando Food Corp.</u> <u>v. United States</u>, 140 F.3d 1437, 1440 (Fed. Cir. 1998); Harmonized Commodity Description and Coding System, Explanatory Notes (2d ed. 1996) ("Explanatory Notes") at GR 1(V) ("[T]he terms of the headings and any relative Section or Chapter Notes are paramount, i.e., they are the first consideration in determining classification.").  If the meaning of a term is in dispute, then the correct meaning is determined by the term's common meaning. <u>See</u> <u>Sarne Handbags Corp. v. United States</u>, 24 CIT __, __, 100 F. Supp. 2d 1126, 1133 (2000).  To determine the common meaning of a tariff term, the court may "rely upon its own understanding of the terms used, and it may consult lexicographic and scientific authorities, dictionaries, and other reliable information." <u>Baxter Healthcare Corp. of Puerto Rico v. United States</u>, 182 F.3d 1333, 1338 (Fed. Cir. 1999) (quoting <u>Brookside Veneers, Ltd. v. United States</u>, 847 F.2d 786, 789 (Fed. Cir. 1988)).  A term's common and commercial meanings are presumed to be the same.  <u>See</u> <u>Carl Zeiss, Inc.</u>, 195 F.3d at 1379.

**I.    The subject merchandise is classifiable as "resins in primary form" under heading 3907, HTSUS.**

The terms of heading 3907, the Chapter Notes to Chapter 39, and the relevant Explanatory Note make clear that powder paints are <u>prima</u> <u>facie</u> classifiable under heading 3907, HTSUS.  Heading 3907 includes "[p]olyacetals, other polyethers and epoxide resins, in

primary forms: Epoxide resins," 3907.30.00, HTSUS, and "polycarbonates, alkyd resins, polyallyl esters and other polyesters, in primary forms: Other," 3907.99.00, HTSUS. Powder paints have as their main ingredient polymer resins that are either epoxy-based, polyester-based, or epoxy-polyester hybrids. See Def.'s Stmt. Material Facts ("Def.'s Stmt.") at ¶10; Pl.'s Resp. Def.'s Stmt. ("Pl.'s Response") at ¶10.

The Chapter Notes to Chapter 39 explain that resins in powder form are resins in "primary form." Chapter 39, Note 6, HTSUS (explaining that the expression "primary forms" can apply to powders). The relevant Explanatory Note clarifies that, for purposes of Chapter 39, primary form powders:

> may consist of [] unplasticised materials which become plastic in the moulding and curing process . . . ; these materials may incorporate fillers . . . , colouring matter or other substances cited in Item (1) above. Powders may be used, for example, to coat objects by the application of heat with or without static electricity.

Explanatory Notes at 597.[9] The additional materials cited in Item

---

[9]The Explanatory Notes "provide a commentary on the scope of each heading of the Harmonized [Tariff] System and are thus useful in ascertaining the classification of merchandise under the system." H.R. Conf. Rep. No. 100-576, at 549 (1988), reprinted in 1988 U.S.C.C.A.N. 1547, 1582. It has long been established that, "[w]hile the Explanatory Notes do not constitute controlling legislative history, they do offer guidance in interpreting HTS[US] subheadings." Lonza, Inc. v. United States, 46 F.3d 1098, 1109 (Fed. Cir. 1995)(internal citations omitted); Russell Stadelman & Co. v. United States, 23 CIT __, __, 83 F. Supp. 2d 1356, 1359 n.6 (1999)(noting that Explanatory Notes help to define Congress's intended meaning of a tariff term), aff'd, 242 F.3d 1044 (Fed. Cir. 2001).

include "substances necessary for [curing,] such as hardeners (cross-linking agents)" and "other materials such as plasticisers, stabilisers, fillers and colouring matter, chiefly intended to give the finished products special physical properties or other desirable characteristics."  Id. at 596.

Although Plaintiff and Customs agree that resins in primary form are the main ingredient of the powder paints, Plaintiff claims that once all the constituent materials -- the resins, pigments, extenders and modifiers, and cross-linkers -- are melted together and passed through the extruder, the resins are "consumed."  See Pl.'s Stmt. at ¶25-26.  As a result, according to Plaintiff, the resins no longer exist in primary form.  See id. at ¶42.  Plaintiff further states that because other ingredients are necessary to the composition of the merchandise, the merchandise is "more than" just resins in primary form.  See Pl.'s Mem. at 6-7.

All of the materials in the powder paint are accounted for in the Explanatory Note, refuting Plaintiff's argument that the merchandise cannot be classified as a primary form because it is "more than" just resins.  Also, merely because materials other than resins are necessary ingredients of powder paints does not, as Plaintiff suggests, mean that the resins are not in primary form. Here the pigments impart color and the fillers produce desired shades and hues, see Pl.'s Stmt. at ¶18, and thus serve only to give the finished powder paint "special physical properties or

other desirable characteristics," as contemplated by the
Explanatory Note.[10]  Explanatory Notes at 596.

Moreover, substances necessary for curing, such as the cross-
linkers, are also specifically provided for by the Explanatory
Note.  See id.  Both Plaintiff and Customs agree that although in
the extrusion process the resins and cross-linkers are melted, the
extrusion process is strictly controlled so that just enough heat
is added to allow the pigments and extenders to be thoroughly
dispersed throughout the powder paint, without causing the resins
to cross-link.[11]  See Esquivel Decl. at ¶9(b); see also Pl.'s Mem.
at 8, Def.'s Reply Pl.'s Mem. at 17 ("Def.'s Mem.").[12]  It is during
the thermosetting process that resins cross-link, and this process
does not occur until the applied powder paints are cured.  See

_____

[10]Plaintiff refers to powder coatings as "polymers which
generally contain pigments, fillers and additives." Govesan
America Corp, Powder Coating Seminar, at Chap. 10, Def. App. At
Ex. 5.  The emphasis on "polymers" as the primary ingredient
further supports this court's analysis that the powder paints are
resins in primary form.

[11]Cross-linking is defined as "the attachment of chains of a
polymer to one another to make the polymer into a single network
with increased strength and resistence to solvents."  Academic
Press Dictionary, supra note 2, at 551.

[12]Plaintiff and Customs agree on the powder paint's three-
step manufacturing process, citing extensively to the declaration
of Juan Esquivel, the Chief Chemist and Laboratory Director of
Govesan, S.A., in support of their understanding of this
manufacturing process.  See Pl.'s Brief passim; Def.'s Brief
passim.  The parties do not, however, agree on how to define
"primary form," which is a question of law for the Court to
decide.

Esquivel Decl. at ¶11.  Because the resins only become cross-linked as part of the curing process, they are not "consumed" in the extrusion process, but rather may, although part of a finished, manufactured product, be considered "resins in primary form," as that tariff term is properly interpreted.[13]  See Explanatory Note at 597 (noting that powders in primary form contain "unplasticised materials which become plastic in the moulding and curing process"); see also Expancel, Inc. v. United States, slip op. 00-19, at 6 n.5 (CIT Feb. 18, 2000) (holding that finished products may be considered primary forms); HQ 951239 (Aug. 11, 1992) (concluding that polyester/epoxy powder coatings like those at

---

[13]Chapter Note 1 to Chapter 39 provides further support for the conclusion that the powder paints at issue are properly classified under heading 3907, HTSUS.  Chapter 39 covers "Plastics and Articles thereof"; Chapter Note 1 defines "plastics" as "those materials of headings 3901 to 3914 which are or have been capable either at the moment of polymerisation or at some subsequent stage, of being formed under external influence (usually heat and pressure, if necessary with a solvent or plasticiser) by moulding, casting, extruding, rolling or other process into shapes which are retained on the removal of the external influence."  Chapter 39, Note 1, HTSUS.  The powder paints, as "polyacetals, other polyethers and epoxide resins, in primary forms: Epoxide resins," under 3907.30.00, HTSUS, and "polycarbonates, alkyd resins, polyallyl esters and other polyesters, in primary forms: Other" under 3906.99.00, HTSUS, are "materials of headings 3901 to 3914." Id.  The powder coatings contain thermosetting resins that are capable of being processed into a shape which is retained upon the removal of the external heat influence.  See Esquivel Decl. at ¶11; see also Pl.'s Reply Br. at 13, 20; Def.'s Mem. at 18.  Moreover, the Encyclopedia Britannica considers resins "not clearly differentiated from plastics." The New Encyclopedia Britannica, supra note 5, at Vol. 9, 1038.  Thus, the powder coatings are properly included in the statutory definition of "plastics."

issue here meet the definition of the term "primary form").

As additional support for this conclusion, the Explanatory Note describes exactly how the subject merchandise is used:  the powder paint coats objects through the application of heat and static electricity.  See Explanatory Notes at 597.  Also, the Explanatory Notes to heading 3907 describe some of the uses of epoxide resins and certain polyesters, such as "alkyd resins" and "polyallyl esters," to include surface-coatings, coatings and varnishes.  See id. at 607; see also HQ 955334 (Mar. 10, 1995).[14]

It is clear from the terms of heading 3907, HTSUS, and the relevant Chapter and Explanatory Notes that Customs correctly classified powder coatings as "resins in primary form" under heading 3907, HTSUS.

## II.  Whether powder paints are also classifiable under 3210, HTSUS

Plaintiff suggests that powder paints are classifiable as "other paints" pursuant to 3210, HTSUS.  We find that the subject merchandise is not prima facie classifiable under 3210, HTSUS, and thus we need not conduct a GRI 3 analysis to address whether

_____

[14]As discussed infra, the Explanatory Notes to subheading 3210, HTSUS, exclude these powder paints, specifically referring to Chapter 39 as the proper chapter for classification of the type of merchandise at issue.  Subheading 3907, HTSUS, is the only possible heading under which the powder paints at issue could be classified in Chapter 39.

heading 3907, HTSUS, or heading 3210, HTSUS, is more specific.[15]

The parties disagree over the meaning of the term "paint." The meaning of a tariff term is a question of law. See Brookside Veneer Ltd., 847 F.2d at 788. Nowhere in the statute or the legislative history is the term "paint" defined. We must therefore look to the common meaning of "paint" as defined by dictionaries, lexicographic and scientific authorities and other reliable sources. See Baxter Healthcare, 182 F.3d at 1338.

Plaintiff claims that paint is not limited to substances in

---

[15]GRI 3 provides:

When, by application of rule 2(b) or for any other reason, goods are, prima facie, classifiable under two or more headings, classification shall be effected as follows:

(a) The heading which provides the most specific description shall be preferred to headings providing a more general description. However, when two or more headings each refer to part only of the materials or substances contained in mixed or composite goods or to part only of the items in a set put up for retail sale, those headings are to be regarded as equally specific in relation to those goods, even if one of them gives a more complete or precise description of the goods.

(b) Mixtures, composite goods consisting of different materials or made up of different components, and goods put up in sets for retail sale, which cannot be classified by reference to 3(a), shall be classified as if they consisted of the material or component which gives them their essential character, insofar as this criterion is applicable.

(c) When goods cannot be classified by reference to 3(a) or 3(b), they shall be classified under the heading which occurs last in numerical order among those which equally merit consideration.

GRI 3, HTSUS.

liquid form.  According to <u>Van Nostrand's Scientific Encyclopedia</u>, <u>supra</u> note 5, at 2117, "paint" is a term "used to describe a wide variety of materials designed to adhere to a substrate and act as a thin, plasticlike layer."  This court has previously accepted this definition of paint, as well as that portion of the <u>Van Nostrand's</u> definition that explains that "[p]aints are available for decorative, protective and other purposes. . . . Protective uses include shielding metals from corrosion [and] protecting plastics from degradation caused by ultraviolet light . . . ."[16] <u>General Motors Corp. v. United States</u>, 15 CIT 372, 379, 770 F. Supp. 641, 647 (1991)(internal quotations and citations omitted), <u>rev'd on other grounds</u>, 976 F.2d 716 (Fed. Cir. 1992)).  Plaintiff argues that according to these definitions, paint does not require a liquid medium.

Defendant, on the other hand, offers alternative dictionary definitions that do require "paints" to be in liquid form.  According to <u>McGraw-Hill</u>, <u>supra</u> note 3, at 1356, paint is "[a] mixture of a pigment and a vehicle, such as oil or water, that together form a liquid or paste that can be applied to a surface to provide an adherent coating that imparts color to and often

---

[16]The powder paints at issue are used to coat objects for industrial purposes, providing protection from environmental elements that would otherwise cause the substrate to rust or deteriorate.  <u>See</u> Rodriguez-Maceda Aff. at ¶13.  Govesan also produces powder coatings which provide ultra-violet protection and corrosion resistance.  <u>See</u> Pl.'s Mem. at Ex. 2.

protects the surface."  The Merriam Webster's Collegiate Dictionary & Thesarus, available at http://www.m-w.com.html ("Merriam Webster"), defines paint in relevant part as, "a mixture of a pigment and a suitable liquid to form a closely adherent coating when spread on a surface in a thin coat . . . ."

The Court is unable to  discern the proper meaning of the term "paint" from these dictionary definitions.  We therefore turn to the Explanatory Notes, see supra note 9, to clarify the meaning of that tariff term.

The Explanatory Note to heading 3210 excludes "[p]owder paints consisting principally of plastics and containing additives and pigments, used for application of static electricity" from that heading, and indicates that such merchandise is properly classified under Chapter 39.  Explanatory Notes at 498 (emphasis added).  In H.I.M./Fathom, Inc. v. United States, the court held that the Explanatory Notes are "persuasive authority for the Court when they specifically include or exclude an item from a tariff heading." H.I.M./Fathom, 21 CIT 776, 779, 981 F. Supp. 610, 613 (1997) (citing Bausch & Lomb, 21 CIT at 174-75, 957 F. Supp. at 288). Applied here, the effect of the Explanatory Notes is to specifically exclude powder paints such as those at issue from the tariff heading: the subject merchandise consists of plastics, contains additives and pigments, and is applied through an electrostatic spray nozzle/gun.  Moreover, the paints that are

specifically <u>included</u> in the Explanatory Note to heading 3210 all require an aqueous, non-aqueous, or simply "liquid" medium.[17]  <u>See</u> Explanatory Notes at 496; <u>see also</u> HQ 085594 (Jan. 29, 1990) (concluding that to be included in heading 3210, goods must be "dispersed in a liquid medium").

Plaintiff and Defendant disagree as to whether the powder paints consist principally of plastics.  <u>See</u> Def.'s Stmt. at ¶10; Pl.'s Resp. at ¶10.  As previously discussed, the subject merchandise is considered a plastic for classification purposes, and resins give the subject merchandise its plastic character. Resins are the largest single component of the subject merchandise, which contains more than fifty percent resins by weight.  <u>See</u> Def.'s Stmt. at ¶10; Esquivel Decl. at ¶10 (tables).[18]  Because these resins are the main ingredient of the powder paints, the

---

[17]"Aqueous" means "[r]elating to or made with water."  <u>See</u> <u>McGraw-Hill</u>, <u>supra</u> note 3, at 114.  "Nonaqueous" means "[p]ertaining to a solution or liquid containing no water."  <u>See</u> <u>id.</u> at 1280.

[18]According to Juan Esquivel's declaration the powder paints contain, approximately, the following amount of resins, by weight:

| | | | | |
|---|---|---|---|---|
| REB-8463 | Epoxy Resin | 58% | | |
| REB-6484 | Epoxy Resin | 57% | | |
| RPB-885 | Polyester Resin | 59% | | |
| RPB-6358 | Polyester Resin | 57% | | |
| RHB-754 (hybrid) | Polyester Resin | 34% | Epoxy Hardner | 22% |
| RHB-579 (hybrid) | Polyester Resin | 56% | Epoxy Hardner | 37% |

Esquivel Decl. at ¶10 (tables).

subject merchandise consists "principally" of plastics.[19]

In this case, the Explanatory Notes control our understanding of the tariff term "paint," and lead us to conclude that the powder paints at issue are not properly considered "paint" for classification purposes.  Consequently, the subject merchandise is not prima facie classifiable under heading 3210, HTSUS.

_____

[19]Plaintiff argues that the powder paints "are not 'principally' comprised of epoxide, polyester, or hybrid resins even if the principal ingredient used to manufacture each coating is a polymer" because "[t]here is no primary or key ingredient which characterizes powder coatings."  Pl.'s Resp. at ¶ 10.  This argument improperly tries to import the essential character analysis of GRI 3(b) by focusing on the "key ingredient" of the powder paints, rather than the ingredient that comprises the majority of the subject merchandise.  "Principally," in this case, means the chief ingredient.  See Merriam Webster, supra page 15.  Although the subject merchandise has a unique combination of ingredients, the interaction of all of which are necessary to the function of the powder paint, see Figlioti Dep. at 56-57, resins make up the largest percentage of the goods by weight. Therefore, the powder paints are primarily plastics, in the form of resins that can be heated in order to hold their shape. Consistent with this view, Customs originally classified the hybrid resins in accordance with which resin -- epoxy or polyester -- was principal, i.e., predominated by weight.  See Chapter 39, Note 4, HTSUS.  Plaintiff's essential character analysis is therefore irrelevant.

**III. Whether parts of the affidavits or declarations submitted by Plaintiff should be stricken.**

To the extent that the affidavits and declarations contain legal arguments and conclusions of law, this Court treats them as argument or disregards them as appropriate.

## Conclusion

Pursuant to GRI 1, we find that the powder paints at issue are classifiable as "resins in primary form" under heading 3907, HTSUS, and are not classifiable as "other paint" under heading 3210, HTSUS.  Summary judgment is accordingly granted for the Defendant.

_____
Donald C. Pogue
Judge


Dated:     September 28, 2001
           New York, New York

**United States Court of International Trade**

GOVESAN AMERICA CORP.,

              Plaintiff,

       v.

UNITED STATES,

              Defendant.

BEFORE: Pogue, Judge

Consol. Court No. 97-10-01833

## Judgment

This action has been duly submitted for decision, and this Court, after due deliberation, has rendered a decision herein; now, in conformity with that decision, it is hereby

ORDERED that Defendant's motion for summary judgment is granted; and it is further

ORDERED that Plaintiff's motion for summary judgment is denied and a final judgment is entered for Defendant.

_____
Donald C. Pogue
Judge

Dated:    September 28, 2001
            New York, New York